Filed 1/30/12

# IN THE SUPREME COURT OF CALIFORNIA

| | | |
|---|---|---|
| THE PEOPLE, | ) | |
| | ) | |
| Plaintiff and Respondent, | ) | |
| | ) | S188619 |
| v. | ) | |
| | ) | Ct.App. 1/4 A124643 |
| ANDREW D. JOHNSON, | ) | |
| | ) | Solano County |
| Defendant and Appellant. | ) | Super. Ct. Nos. VCR 191129 & |
| | ) | VCR 191363 |
| _____ | ) | |

Defendants in criminal cases have a federal constitutional right to represent themselves. (*Faretta v. California* (1975) 422 U.S. 806 (*Faretta*).) In *Indiana v. Edwards* (2008) 554 U.S. 164 (*Edwards*), however, the United States Supreme Court held that states may, but need not, deny self-representation to defendants who, although competent to stand trial, lack the mental health or capacity to represent themselves at trial — persons the court referred to as "gray-area defendants." (*Id*. at p. 174.) We must decide whether California courts may accept this invitation and apply a higher standard of mental competence for self-representation than for competency to stand trial.

Because California law — which, of course, is subject to the United States Constitution — has long been that criminal defendants have *no* right of self-representation, we conclude that California courts may deny self-representation when the United States Constitution permits such denial. We also conclude the

1

trial court acted within its discretion in revoking defendant's self-representation status.

## I. FACTS AND PROCEDURAL HISTORY

These facts are taken largely from the Court of Appeal's opinion.

A jury convicted defendant Andrew D. Johnson of crimes arising out of two separate assaults. The facts of the crimes are irrelevant to the legal issue before us. Essentially, the evidence presented at trial showed that during the early morning hours of June 23, 2007, defendant committed a brutal sexual assault on a Vallejo bartender. Later that same day, he hit the patron of a sandwich shop on the head with a metal chair, rendering him temporarily unconscious.

A single judge, Judge Allan P. Carter, was assigned to the case for all proceedings. Defendant was originally represented by counsel, but on July 5, 2007, he asked to represent himself, and Judge Carter allowed him to do so. He represented himself at various pretrial proceedings through January 2008. On January 30, 2008, Judge Carter expressed a doubt about defendant's competence to be tried due to his unusual behavior and the nature and tone of letters defendant had written to the court and others. The court appointed an attorney to provide an opinion on defendant's competency and to represent defendant at any competency hearing. After meeting with defendant, the attorney told the court he believed it was a "close call," but he shared the court's concern about defendant's competency. The court suspended the criminal proceedings and appointed two experts, and later a third, to evaluate defendant's competency. Defendant refused to meet with any of these experts.

A jury trial on defendant's competency was held in October 2008. Dr. Kathleen O'Meara testified for the defense. She said there was "a very strong possibility" that defendant had some type of delusional thought disorder coupled with conspiracy paranoia and, "err[ing] in the direction of caution," concluded that

2

it was "more likely than not" that defendant was not competent. She said she believed defendant understood the nature and purpose of the proceedings against him, at least to some degree, but that his paranoia might impair his ability to cooperate with defense counsel in a rational manner. She based her opinion on her review of transcripts of the pretrial proceedings, defendant's letters, defendant's medical chart, and conversations with correctional staff. She said it was "very unusual" to offer an opinion without having interviewed the defendant and that her opinion was "therefore somewhat speculative." She had reservations about her opinion and said that defendant could be malingering.

Two psychiatrists testified for the prosecution. Dr. Herb McGrew testified that it was not possible to form an opinion on competency without interviewing defendant. He reviewed collateral materials including court transcripts and defendant's letters and medical chart. He said these materials suggested the possibility of mental illness but no conclusion could be reached without interviewing defendant; one can be "extremely crazy and be competent" so an interview is essential in determining competency. Dr. Murray Eiland also testified that an interview was essential and that he could not form an opinion on competency without one.

The court instructed the jury, "The defendant is mentally competent to stand trial if he can do all of the following: [¶] One, understand the nature and purpose of the criminal proceedings again[st] him; [¶] Two, assist in a rational manner his attorney in presenting his defense or conduct his own defense in a rational manner; and, [¶] Three, understand his own status and condition in the criminal proceedings."

On October 28, 2008, the jury found defendant competent to stand trial. The court reinstated criminal proceedings and defendant resumed self-representation.

Two days later, the court expressed concern about defendant's ability to represent himself. It told defendant, "You may be competent to stand trial, but I'm not convinced that you are competent to represent yourself." It noted that in *Edwards*, *supra*, 554 U.S. 164, filed the previous June, the United States Supreme Court had held that judges may insist on representation by counsel for those who are competent to stand trial but who suffer from mental illness to the point where they are not competent to conduct trial proceedings by themselves.

The court found that defendant met this description. It catalogued his bizarre, noncompliant, and disruptive behavior in court and in jail. It found that defendant "has disorganized thinking, deficits in sustaining attention and concentration, impaired expressive abilities, anxiety and other common symptoms of severe mental illnesses which can impair his ability to play the significantly expanded role required for self-representation, even if he can play the lesser role of a represented defendant." Over defendant's objection, the court revoked his self-representation status and appointed the attorney who had represented him during the competency proceeding to represent him in the criminal proceedings. That attorney represented him from that point on, including at trial and sentencing.

The trial court sentenced defendant to prison, and he appealed. The Court of Appeal affirmed the judgment. It rejected defendant's argument that the trial court erred in revoking his self-representation status. We granted defendant's petition for review limited to the question regarding defendant's self-representation.

## II. DISCUSSION

In *Edwards*, *supra*, 554 U.S. 164, the high court held that states may, but need not, deny self-representation in limited circumstances due to a defendant's mental incapacity. The trial court relied on *Edwards* in revoking defendant's self-representation status. This circumstance gives rise to two questions: (1) Should

4

California accept the high court's invitation; that is, may California courts deny self-representation when *Edwards* permits such denial? (2) If so, did the trial court properly deny self-representation in this case? We will discuss the former question first. Because we conclude that California courts may deny self-representation when *Edwards* permits, we will then proceed to the second question.

### A. Whether California courts may deny self-representation when *Indiana v. Edwards* (2008) 554 U.S. 164 permits such denial

In *Faretta*, *supra*, 422 U.S. 806, the United States Supreme Court held that the Sixth Amendment to the United States Constitution gives criminal defendants the right to represent themselves. When *Faretta* was decided, the law in California had been that a criminal defendant had no constitutional or statutory right to self-representation, although in noncapital cases the trial court had discretion to grant a defendant's request for self-representation. (*People v. Sharp* (1972) 7 Cal.3d 448, 459, 461, 463-464 [no right to self-representation]; *People v. Floyd* (1970) 1 Cal.3d 694, 702-703 [discretion to grant self-representation]; see *People v. Taylor* (2009) 47 Cal.4th 850, 871-872 (*Taylor*).) The California Constitution gives criminal defendants only the right to "the assistance of counsel" and "to be personally present with counsel." (Cal. Const., art. I, § 15.) Still today, Penal Code section 686.1 provides that "the defendant in a capital case shall be represented in court by counsel at all stages of the preliminary and trial proceedings." (See *Taylor*, *supra*, at p. 872, fn. 8.)

When the Legislature enacted Penal Code section 686.1, it made this finding: "The Legislature finds that persons representing themselves cause unnecessary delays in the trials of charges against them; that trials are extended by such persons representing themselves; and that orderly trial procedures are disrupted. Self-representation places a heavy burden upon the administration of

5

criminal justice without any advantages accruing to those persons who desire to represent themselves." (Stats. 1971, ch. 1800, § 6, p. 3898; see *People v. Sharp*, *supra*, 7 Cal.3d at p. 463 [quoting this policy statement].)

Obviously, California law is subject to the United States Constitution, including the Sixth Amendment right to self-representation as established in *Faretta*, *supra*, 422 U.S. 806, and its progeny. Penal Code section 686.1, for example, cannot be given effect. But *People v. Sharp*, *supra*, 7 Cal.3d 448, "remains good law as to the California Constitution and Penal Code." (*Taylor*, *supra*, 47 Cal.4th at p. 872, fn. 8.) California courts should give effect to this California law when it can.

"In the wake of *Faretta*'s strong constitutional statement, California courts tended to view the federal self-representation right as absolute, assuming a valid waiver of counsel." (*Taylor*, *supra*, 47 Cal.4th at p. 872.) This view was strengthened by the later decision in *Godinez v. Moran* (1993) 509 U.S. 389 (*Godinez*). In *Godinez*, the defendant, found competent to stand trial, sought and was allowed to waive counsel and plead guilty. The high court held that he was properly permitted to do so. It rejected the argument that federal law required a higher standard of competence for waiving counsel or pleading guilty than is required to stand trial. (See *Taylor*, *supra*, at p. 874.) California courts, including this one, as well as courts in other jurisdictions, generally interpreted *Faretta* and *Godinez* as prohibiting states from imposing a higher standard of competency for self-representation than the standard of competency to stand trial. (*Taylor*, *supra*, at pp. 874-876.)

In 2008, however, the high court decided *Edwards*, *supra*, 554 U.S. 164. *Edwards* held that "the Constitution permits judges to take realistic account of the particular defendant's mental capacities by asking whether a defendant who seeks to conduct his own defense at trial is mentally competent to do so. That is to say,

6

the Constitution permits States to insist upon representation by counsel for those competent enough to stand trial under *Dusky* [*v. United States* (1960) 362 U.S. 402] but who still suffer from severe mental illness to the point where they are not competent to conduct trial proceedings by themselves." (*Edwards*, *supra*, at pp. 177-178.) The court called those defendants competent to stand trial but not to represent themselves "gray-area defendants." (*Id*. at p. 174.)

The *Edwards* court quoted an amicus curiae brief from the American Psychiatric Association stating that " '[d]isorganized thinking, deficits in sustaining attention and concentration, impaired expressive abilities, anxiety, and other common symptoms of severe mental illnesses can impair the defendant's ability to play the significantly expanded role required for self-representation even if he can play the lesser role of represented defendant.' " (*Edwards*, *supra*, 554 U.S. at p. 176.) It noted that some of the documents the defendant had prepared "suggest to a layperson the common sense of this general conclusion." (*Ibid*.)

"The court in *Edwards* did not hold . . . that due process mandates a higher standard of mental competence for self-representation than for trial with counsel. The *Edwards* court held only that states *may*, without running afoul of *Faretta*, impose a higher standard . . . ." (*Taylor*, *supra*, 47 Cal.4th at pp. 877-878.) In *Taylor*, the trial court had *permitted* a defendant who was competent to stand trial and waive counsel to represent himself. Because the *Edwards* rule is permissive, not mandatory, we held that *Edwards* "does not support a claim of federal constitutional error in a case like the present one, in which defendant's request to represent himself was granted." (*Taylor*, *supra*, at p. 878.) This case presents the reverse situation: the trial court *denied* self-representation under *Edwards*. We must decide whether California courts may accept *Edwards*'s invitation and deny self-representation to gray-area defendants.

7

Defendant argues that we should not accept the *Edwards* invitation. Preliminarily, he argues that the courts below violated the rule that "all tribunals exercising inferior jurisdiction are required to follow decisions of courts exercising superior jurisdiction," and, specifically, "decisions of this court are binding upon and must be followed by all the state courts of California." (*Auto Equity Sales, Inc. v. Superior Court* (1962) 57 Cal.2d 450, 455 (*Auto Equity*).) Citing a pre-*Edwards* decision from this court that had assumed that federal law did not permit a higher standard of competency for self-representation than for standing trial (*People v. Halvorsen* (2007) 42 Cal.4th 379, 431-434), and a post-*Edwards* decision that explained that previous cases had so assumed (*Taylor*, *supra*, 47 Cal.4th at pp. 874-876), defendant argues that *only this court* could decide whether to accept the *Edwards* invitation and adopt a higher standard for self-representation.

Defendant is incorrect. The trial court and Court of Appeal are, indeed, bound by decisions of this court. If this court had held that trial courts should not accept the *Edwards* invitation, the lower courts would have been bound to follow that holding. But this court has never so held. The cases defendant relies on did not consider the question. " '[C]ases are not authority for propositions not considered.' " (*In re Marriage of Cornejo* (1996) 13 Cal.4th 381, 388.) Lower courts may decide questions of first impression, including the effect that subsequent events, such as a United States Supreme Court decision, have on decisions from a higher court, including this one. In this case, that authority includes deciding whether to accept the *Edwards* invitation. If a higher court believes the lower court decided a question erroneously, it can take appropriate action. But a lower court does not violate *Auto Equity*, *supra*, 57 Cal.2d 450, merely by deciding questions of first impression.

8

Turning to the merits, the Attorney General and amici curiae San Francisco Public Defender, California Attorneys for Criminal Justice, and the Office of the State Public Defender all argue that California courts should have discretion to deny self-representation to gray-area defendants. We agree. Indeed, to refuse to recognize such discretion would be inconsistent with California's own law. In *People v. Floyd*, *supra*, 1 Cal.3d 694, we upheld the denial of a capital defendant's request for self-representation citing, among other factors, his youth, his low level of education, and his ignorance of the law. (*Id*. at pp. 703-704.) Certainly, a defendant who could be denied self-representation under *Edwards*, *supra*, 554 U.S. 164, could also have been denied self-representation under *People v. Sharp*, *supra*, 7 Cal.3d 448, and *People v. Floyd*. Denying self-representation when *Edwards* permits does not violate the Sixth Amendment right of self-representation. Because California law provides *no* statutory or constitutional right of self-representation, such denial also does not violate a state right. Consistent with long-established California law, we hold that trial courts may deny self-representation in those cases where *Edwards* permits such denial.

It remains to consider the standard for trial courts to employ when deciding whether to deny self-representation under *Edwards*, *supra*, 554 U.S. 164. The Attorney General suggests the "standard could be as simple as determining whether the defendant can conceive of a defense and coherently communicate it to the judge and jury." Amici curiae San Francisco Public Defender and California Attorneys for Criminal Justice urge this court to return to what they view as the pre-*Faretta* standard in California "requiring that a defendant who wishes to represent himself demonstrate an understanding of the charges, defenses and punishments, and an ability to rationally communicate." Amicus curiae Office of the State Public Defender urges this court to adopt the standard stated in *People v. Burnett* (1987) 188 Cal.App.3d 1314. As we explained in *Taylor*, *Burnett* stated

9

"a test for the 'cognitive and communicative skills' involved in competently representing oneself: 'Such skills are present where the accused: (1) possesses a reasonably accurate awareness of his situation, including not simply an appreciation of the charges against him and the range and nature of possible penalties, but also his own physical or mental infirmities, if any; (2) is able to understand and use relevant information rationally in order to fashion a response to the charges; and (3) can coherently communicate that response to the trier of fact.' (*Burnett*, *supra*, 188 Cal.App.3d at p. 1327, fn. omitted.)" (*Taylor*, *supra*, 47 Cal.4th at p. 873.)

Two thoughtful law review articles have suggested more specific standards. One suggested this standard: "A criminal defendant is mentally incompetent to represent himself or herself at trial if and only if a mental disorder or disability would prevent the defendant from achieving a basic understanding of the charges, law, and evidence, from formulating simple defense strategies and tactics, or from communicating with the witnesses, the court, the prosecutor, and the jury in a manner calculated to implement those strategies and tactics in at least a rudimentary manner." (Marks, *State Competence Standards for Self-Representation in a Criminal Trial: Opportunity and Danger for State Courts after* Indiana v. Edwards (2010) 44 U.S.F. L.Rev. 825, 847, italics deleted (Marks).)

Drawing on "social problem-solving theory," another article suggests a more technical standard: "[P]roblem-solving theory suggests that, to represent oneself at a criminal trial, one should possess foundational abilities to perceive problematic situations, generate alternative courses of action, maintain mental organization, and communicate decisions to a functionary of the court. Within the context of a prosecution, a defendant should also possess the ability to identify a plausible source of the prosecution, an ability to gather information to evaluate the

10

state's case, a willingness to attend to the prosecution, and an ability to withstand the stress of trial. Finally, for certain key decisions, such as selecting the defense to pursue at trial, a defendant should be capable of justifying a decision with a plausible reason." (Johnston, *Representational Competence: Defining the Limits of the Right to Self-representation at Trial* (2011) 86 Notre Dame L.Rev. 523, 595.)

All of these suggested standards are plausible. But we are constrained by the circumstance that what is permissible is only what *Edwards* permits, not what pre-*Faretta* California law permitted. In other words, because of federal constitutional constraints, in considering the defendant's mental state as a reason to deny self-representation, a California court may not exercise the discretion permitted under California law but solely that permitted in *Edwards*.

*Edwards* described competence to represent oneself at trial as the ability "to carry out the basic tasks needed to present [one's] own defense without the help of counsel." (*Edwards*, *supra*, 554 U.S. at pp. 175-176.) It also said the states may deny self-representation to those competent to stand trial but who "suffer from severe mental illness to the point where they are not competent to conduct trial proceedings by themselves." (*Id*. at p. 178.) Although asked to adopt "a more specific standard," the high court declined to do so. (*Ibid*.)

At this point, at least, we also think it best not to adopt a more specific standard. The discussion in *People v. Burnett*, *supra*, 188 Cal.App.3d at page 1327, and the standards suggested in the two law review articles quoted above are helpful to the extent they suggest relevant factors to consider. Experts asked to examine defendants for this purpose, and trial courts called on to make these rulings, may consider these factors in their examinations and rulings. But, pending further guidance from the high court, we believe the standard that trial courts considering exercising their discretion to deny self-representation should

11

apply is simply whether the defendant suffers from a severe mental illness to the point where he or she cannot carry out the basic tasks needed to present the defense without the help of counsel.

A trial court need not routinely inquire into the mental competence of a defendant seeking self-representation. It needs to do so only if it is considering denying self-representation due to doubts about the defendant's mental competence. When a court doubts a defendant's competence to stand trial, it "shall appoint a psychiatrist or licensed psychologist, and any other expert the court may deem appropriate, to examine the defendant." (Pen. Code, § 1369, subd. (a).) Similarly, when it doubts the defendant's mental competence for self-representation, it may order a psychological or psychiatric examination to inquire into *that* question. To minimize the risk of improperly denying self-representation to a competent defendant, "trial courts should be cautious about making an incompetence finding without benefit of an expert evaluation, though the judge's own observations of the defendant's in-court behavior will also provide key support for an incompetence finding and should be expressly placed on the record." (Marks, *supra*, 44 U.S.F. L.Rev. at p. 849.)[1]

Trial courts must apply this standard cautiously. The *Edwards* court specifically declined to overrule *Faretta*, *supra*, 422 U.S. 806. (*Edwards*, *supra*, 554 U.S. at p. 178.) Criminal defendants still generally have a Sixth Amendment right to represent themselves. Self-representation by defendants who wish it and validly waive counsel remains the norm and may not be denied lightly. A court

---

[1] "To avoid the need for repeated psychiatric examinations, a court ordering a trial-competence examination might choose to include in its order the question of self-representation competence, even if the defendant has not made a *Faretta* motion." (Marks, *supra*, 44 U.S.F. L.Rev. at p. 849.)

may not deny self-representation merely because it believes the matter could be tried more efficiently, or even more fairly, with attorneys on both sides. Rather, it may deny self-representation only in those situations where *Edwards* permits it.

### B. Whether the court properly denied self-representation in this case

Defendant argues that the holding of *Edwards*, *supra*, 554 U.S. 164, may not be applied "retroactively" to this case. But the trial court did not apply *Edwards* retroactively. It revoked defendant's self-representation *after Edwards* was decided and in express reliance on that decision. "[A] law governing the conduct of trials is being applied 'prospectively' when it is applied to a trial occurring after the law's effective date, regardless of when the underlying crime was committed or the underlying cause of action arose." (*Tapia v. Superior Court* (1991) 53 Cal.3d 282, 289.) *Tapia* involved legislation, but we see no reason to apply a different rule to a judicial decision. *Edwards* was applied prospectively, not retroactively.

Defendant also argues the record does not support the court's ruling. As with other determinations regarding self-representation, we must defer largely to the trial court's discretion. (*People v. Lawrence* (2009) 46 Cal.4th 186, 191-192; *People v. Floyd*, *supra*, 1 Cal.3d at pp. 702-703 [pre-*Faretta* holding that denial of self-representation is subject to review for abuse of discretion].) The trial court's determination regarding a defendant's competence must be upheld if supported by substantial evidence. (*People v. Lawley* (2002) 27 Cal.4th 102, 131 [competence to stand trial].) Such deference is especially appropriate when, as here, the same judge has observed the defendant on numerous occasions. "[T]he trial judge, particularly one such as the trial judge in this case, who presided over one of Edwards' competency hearings and his two trials, will often prove best able to

13

make more fine-tuned mental capacity decisions, tailored to the individualized circumstances of a particular defendant." (*Edwards*, *supra*, 554 U.S. at p. 177.)

We see no abuse of discretion in this case. The trial judge, who had permitted defendant to represent himself for several months, revoked defendant's self-representation status following a very careful and thorough discussion. He cited and applied the precise standard stated in *Edwards*, *supra*, 554 U.S. 164. He had previously appointed three mental health experts to evaluate defendant's competence to stand trial and had heard their testimony at the trial competency hearing. Although he did not appoint a mental health expert specifically to evaluate defendant's competence to represent himself, we believe under the circumstances doing so was not necessary for the court to make a sufficiently informed decision.

We agree with the Court of Appeal's assessment: "The record here supports the trial court's conclusion that defendant, although competent to stand trial, was not competent to conduct trial proceedings by himself. A psychologist had testified at the trial-competency hearing that there was 'a very strong possibility' that defendant had some type of delusional thought disorder coupled with conspiracy paranoia. Defendant had represented himself for almost seven months of preliminary proceedings during which he filed a number of nonsensical motions and conducted himself in a bizarre and disruptive manner. The trial judge, who had presided over all these matters, was well acquainted with defendant's limitations and reasonably concluded that defendant lacked the mental capacity to conduct his defense without the assistance of counsel. The court found, upon substantial evidence, that defendant 'has disorganized thinking, deficits in sustaining attention and concentration, impaired expressive abilities, anxiety and other common symptoms of severe mental illnesses which can impair his ability to play the significantly expanded role required for self-representation,

14

even if he can play the lesser role of a represented defendant.'  The trial judge showed great patience in permitting defendant an opportunity to represent himself but chose to deny further self-representation when it became clear that defendant was accomplishing nothing and might, in the court's opinion, be deprived of a fair trial if allowed to continue his self-representation."

In *Edwards*, the high court attached as an appendix a bizarre document the defendant had prepared as an example suggesting the common sense of the American Psychiatric Association's observations regarding how symptoms of severe mental illnesses can impair a defendant's capability for self-representation. (*Edwards*, *supra*, 554 U.S. at pp. 176, 179.)  Similar examples abound in the record of this case.[2]

Defendant notes that the jury that had found him competent to stand trial had been instructed that to be competent, he had to be able to "assist in a rational manner his attorney in presenting his defense *or conduct his own defense in a rational manner*."  (Italics added.)  He argues that this means the jury had specifically found that he *could* conduct his own defense in a rational manner.  As the Court of Appeal found in a portion of its opinion not now under review, the

_____

[2]  As one example, defendant prepared a handwritten document containing a bizarre caption and addressed to the "Executive Office for Claims."  The first paragraph of that document states:  "Efficient proffessional Salutations.  As to the chief unparallel tainted tailspin exploition, incomplete concord tactical operation submission of facts.  In rapid ex-parte pressing arrangment, with a bust of counterfeit ring.  Inside of Superior Court department 12, with regard to all applicable factions.  At center of false and deceptive copyright infringement hand manipulation practices is at ONE, California Superior Court Judge Allan Patrick Carter.  Please note that in endeavoring to case targeted light into a presently dark corner.  key & compelling affirmed facts can be further examined online under the cover or disguise of Federal Pace Service.  The factually correct in case and key point, keeping all enclosed documents sealed, to applicable loophole composite design.  Is complete case number 2:08-CV-00462."

trial court probably erred, although harmlessly, by including the italicized language. That language set too high a standard for competence to stand trial. But the jury's verdict and the instructions did not deprive the trial court of discretion to find defendant incompetent to represent himself under *Edwards*. Whether to deny self-representation due to mental incompetence is for the court, not a jury, to determine based on all of the information available to the court. (See *Edwards*, *supra*, 554 U.S. at p. 177.)

Defendant also notes that none of the experts appointed to evaluate him for trial competency had interviewed him personally. He is correct. The reason for this, however, is that defendant *refused* to meet with the experts. This refusal certainly handicapped the experts and made it more difficult for the jury to determine his competence to stand trial. But a defendant's refusal to be examined does not eliminate the court's and, ultimately, the jury's duty (see Pen. Code, §§ 1368, 1369) to determine his competence to stand trial when a doubt exists. The court and jury must do the best they can under the circumstances. Similarly, the refusal to be examined does not, and cannot, deprive the court of discretion to deny self-representation due to defendant's mental incompetence. The court had to, and did, do the best it could under the circumstances.

Because the record supports the trial court's findings regarding defendant's competence to represent himself, that court's ruling revoking his self-representation status was within its discretion. The Court of Appeal correctly so concluded.

16

### III. Conclusion

We affirm the judgment of the Court of Appeal.

CHIN, J.

WE CONCUR:

CANTIL-SAKAUYE, C. J.
KENNARD, J.
BAXTER, J.
WERDEGAR, J.
CORRIGAN, J.
LIU, J.

*See next page for addresses and telephone numbers for counsel who argued in Supreme Court.*

**Name of Opinion** People v. Johnson
_____

**Unpublished Opinion** XXX NP opn. filed 10/25/10 – 1st Dist., Div. 4
**Original Appeal**
**Original Proceeding**
**Review Granted**
**Rehearing Granted**

_____

**Opinion No.** S188619
**Date Filed:** January 30, 2012
_____

**Court:** Superior
**County:** Solano
**Judge:** Allan P. Carter

_____

**Counsel:**

Barry M. Karl, under appointment by the Supreme Court, for Defendant and Appellant.

Edmund G. Brown, Jr., and Kamala D. Harris, Attorneys General, Dane R. Gillette, Chief Assistant Attorney General, Gerald A. Engler, Assistant Attorney General, Laurence K. Sullivan, Rene A. Chacon and David M. Baskind, Deputy Attorneys General, for Plaintiff and Respondent.

Michael J. Hersek, State Public Defender, Barry P. Helft, Chief Deputy State Public Defender, and Nina Rivkind, Deputy State Public Defender, as Amici Curiae on behalf of Plaintiff and Respondent.

Cliff Gardner and Lawrence A. Gibbs for San Francisco County Public Defender and California Attorneys for Criminal Justice as Amici Curiae.

**Counsel who argued in Supreme Court (not intended for publication with opinion):**

Barry M. Karl
620 Jefferson Avenue
Redwood City, CA  94063
(650) 366-6789

David M. Baskind
Deputy Attorney General
455 Golden Gate Avenue, Suite 11000
San Francisco, CA  94102-7004
(415) 703-1308