Filed 7/29/14  P. v. Williams CA4/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| THE PEOPLE, | |
| Plaintiff and Respondent, | G049662 |
| v. | (Super. Ct. No. FVA1001767) |
| EMMIT WILLIAMS, | O P I N I O N |
| Defendant and Appellant. | |

Appeal from a judgment of the Superior Court of San Bernardino County, Ingrid Adamson Uhler, Judge.  Affirmed in part and reversed in part.

Susan K. Shaler, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, Eric A. Swenson and Laura A. Glennon, Deputy Attorneys General, for Plaintiff and Respondent.

\*         \*         \*

Defendant Emmit Williams was convicted of two counts of petty theft with a prior (Pen. Code, § 666, subd. (a))[1] and the jury found it to be true he had committed five prior strike offenses and served numerous prior prison terms (§§ 1170.12, subds. (a)-(d), 667, subds. (b)-(i), and 667.5, subd. (b)). In September 2012, the trial court sentenced defendant to 50 years to life pursuant to the Three Strikes Law then in effect and ordered that he pay a $240 restitution fine and a $240 parole revocation fine. The court exercised its discretion not to impose additional enhancements for the prison priors. The court awarded defendant 669 days of actual time credits and conduct credits of 335 days, for a total of 1004 days. After the voters passed Proposition 36 to modify the Three-Strikes sentencing scheme, defendant petitioned the trial court to recall his sentence. The court granted the petition and vacated the prior sentence. The court resentenced defendant to the upper term of six years on count 1, and one-third of the midterm, which was one year and four months, on count 2, for a total of seven years four months.

Defendant represented himself during the guilt phase at trial. The principal issue on appeal is whether the court adequately warned defendant under *Faretta v. California* (1975) 422 U.S. 806 (*Faretta*) of the dangers of self-representation. Defendant contends the court did not, relying principally on the contention that when the court initially discussed the *Faretta* waiver with him, the court incorrectly informed him the maximum sentence was six years. On at least two subsequent occasions before trial, however, the court correctly informed defendant he was facing a possible sentence of 50 years to life. The court also told defendant he could cease self-representation at any time, and the court appointed standby counsel in case defendant were to exercise that right, which the defendant did at a later phase of the trial. On the whole the record supports the

---

[1]      All statutory references are to the Penal Code.

2

conclusion that defendant made an informed decision to exercise his right to self-representation.

Defendant also contends he was improperly assessed a restitution fine of $240, which was the minimum fine at the time of sentencing, whereas the minimum fine at the time he committed the crimes was $200. We agree there is sufficient concern whether the trial court relied on the wrong statute, thereby warranting reversal with directions to reconsider the restitution and parole revocation fines. In all other respects, we affirm the judgment.

FACTS

The underlying facts of the crimes are both undisputed and not germane to the issues on appeal, and, therefore, we provide only a general overview.

In October 2009 two employees of a Stater Bros. grocery store in Rialto, California observed defendant stuff various products from the health and beauty aisle into his pockets and walk out without paying. They detained defendant in the breezeway and found he was in possession of $40.72 worth of unpaid merchandise.

In December 2009, defendant was charged with a single count of petty theft with a prior. (§ 666, subd. (a).) The people alleged seven prior prison terms and one prior strike. Defendant failed to appear for arraignment and a bench warrant issued for his arrest.

On November 10, 2010, two employees of a different Stater Bros. store in Bloomington, California witnessed almost the same set of events. They detained defendant after he left the store without paying for any merchandise and found he had taken approximately $50 worth of merchandise.

On the morning of November 15, 2010, defendant appeared in court and was arraigned on the December 2009 complaint. At that time, he moved to represent

3

himself. He signed a *Faretta* waiver and acknowledged in open court that self-representation is not wise, that he lacks a legal education (his highest education being a high school diploma), that the prosecutor does have legal training, that he will not receive special consideration, that he will have to abide by all of the same rules as an attorney would, that disruptive behavior could result in the court terminating his self-representation, and that he would be giving up any appellate arguments concerning ineffective assistance of counsel. With respect to the possible punishment, the court stated, "Do you also understand that the maximum exposure if you are found guilty of the charged offense and the strike is 6 years in state prison?" Defendant responded that he did. Defendant also indicated that he had represented himself in two prior criminal matters. The court granted his request to represent himself.

Later that day, the People filed a second felony complaint alleging another petty theft with a prior (§ 666, subd. (a)) in connection with the November 10 incident, this time alleging five prior strikes in addition to seven prison priors. That afternoon another warrant issued for defendant's arrest in connection with the second complaint.

On November 17, 2010, defendant received a copy of the second felony complaint and waived its reading in open court. The court again went over the *Faretta* waiver, but this time the court informed defendant, "based on the felony Complaint as filed, . . . you could receive a life sentence with a 25-year minimum." Defendant again elected self-representation, which the court permitted.

Over the course of the ensuing months defendant filed numerous motions on his behalf seeking dismissal of the case and suppression of evidence. After a preliminary hearing, the People filed a first and later a second amended information that consolidated both petty theft accusations into a single case. Defendant received both and waived their reading in open court.

In October 2011, defendant was in court on a motion hearing when, in the course of his argument, he mentioned his potential 25-years-to-life sentence. The court

4

corrected him, stating, "Actually, I think it's 50-to-life in all honesty because it's 25-to-life for each consecutive sentence. Actually, it's more than that because you have priors as well."

On May 4, 2012, defendant was in court requesting bifurcation of certain issues in the trial. In the course of that discussion, the court reiterated, "I've already informed you that if you are found guilty of each of the charges, you could receive 50 years to life."

On May 8, 2012, the court appointed standby counsel for defendant. The court explained, "Standby counsel is only necessary if you can't go forward — either you're disruptive to the court, *you decide that you want to terminate your pro per privileges*, you have some medical issues that come up, whatever — then [standby counsel] will be able to stand in, come into the trial and continue the trial as your attorney." (Italics added.)

Trial testimony began on May 14, 2012. After defendant was found guilty, he requested that his standby counsel represent him at the trial on the enhancements, which the court granted. After the jurors found the priors to be true, defendant requested that he represent himself again for purposes of sentencing, which the court granted.

Defendant timely appealed.

DISCUSSION

Defendant's principal contention on appeal is that the court's admonitions against self-representation were inadequate under *Faretta v. California*, *supra*, 422 U.S. 806 and its progeny. We disagree.

"Defendants in criminal cases have a federal constitutional right to represent themselves." (*People v. Johnson* (2012) 53 Cal.4th 519, 523 [citing *Faretta*].) To constitute a valid waiver of the right to counsel, a defendant "'should be made aware

5

of the dangers and disadvantages of self-representation, so that the record will establish that "he knows what he is doing and his choice is made with eyes open." [Citation.]' [Citation.] No particular form of words is required in admonishing a defendant who seeks to waive counsel and elect self-representation; the test is whether the record as a whole demonstrates that the defendant understood the disadvantages of self-representation, including the risks and complexities of the particular case." (*People v. Koontz* (2002) 27 Cal.4th 1041, 1070 (*Koontz*).) "The requirements for a valid waiver of the right to counsel are (1) a determination that the accused is competent to waive the right, i.e., he or she has the mental capacity to understand the nature and object of the proceedings against him or her; and (2) a finding that the waiver is knowing and voluntary, i.e., the accused understands the significance and consequences of the decision and makes it without coercion." (*Id*. at pp. 1069-1070.) "Self-representation by defendants who wish it and validly waive counsel remains the norm and may not be denied lightly. A court may not deny self-representation merely because it believes the matter could be tried more efficiently, or even more fairly, with attorneys on both sides." (*People v. Johnson, supra*, 53 Cal.4th at p. 531.) "On appeal, we examine de novo *the whole record* — not merely the transcript of the hearing on the *Faretta* motion itself — to determine the validity of the defendant's waiver of the right to counsel." (*Koontz, supra*, at p. 1070, italics added.)

Defendant does not claim he has a mental illness or other mental incompetence that would prevent him from representing himself. Defendant's sole contention is that his waiver of his right to counsel was invalid because he was uninformed. First, he claims the court did not advise him of the charges he faced. Second, he claims the court did not advise him of the possible punishment he faced. We reject both contentions.

With respect to advising the defendant of the charged offenses, defendant notes that the *Faretta* waiver that he signed did not list the actual offenses. And at least

with respect to the first complaint, at the time the *Faretta* waiver was discussed, there is no indication in the record that the court informed defendant of the charge of petty theft with a prior.

In assessing voluntariness, however, we must examine the whole record. Here, the record overwhelmingly supports the notion that defendant knew the charges against him. Defendant sat through a preliminary hearing at which each charge was individually addressed by testimony from different officers. He signed two different *Faretta* waivers, indicating he knew there were two cases pending. In December 2010, he filed a motion asking that count 1 be tried separately from the remaining counts. In January 2011 defendant was personally served with a motion to consolidate the two cases, which included a description of each case. Defendant acknowledged receipt of both the first and second amended informations, and waived their reading, both of which included both counts. We have no trouble concluding defendant was aware of the charges against him.

With respect to defendant's knowledge of the possible punishment against him, defendant relies heavily on the fact that when the court took the original *Faretta* waiver, it informed defendant the maximum punishment was six years. At that point, however, only the first complaint had been filed alleging a single strike. The maximum punishment for petty theft with a prior at that time was three years. The court doubled that to reflect the single strike. (§ 667, subd. (e)(1).) This was accurate as far as it went, but the court omitted mentioning the seven prison priors, which could have added another seven years.[2] (§ 667.5, subd. (b).)

---

[2] We note, however, that at both the original sentencing and the resentencing after the passage of Proposition 36, the court elected not to impose the prison prior enhancements. Although we do not reach the issue of prejudice because we find no error, this fact surely would have mitigated any prejudice from not informing defendant of the effect of the prison priors.

Again, however, we must look at the whole record. Two days after being misinformed about the potential punishment on the first complaint, defendant was informed that his exposure on the second complaint was 25 years to life in prison. He, nonetheless, expressly reaffirmed his desire to represent himself. And after the charges were consolidated, on two occasions defendant was informed his maximum exposure was 50 years to life. In one of those instances the court informed defendant his exposure was actually greater than that because of the prison priors. After that, the court appointed standby counsel and informed defendant he could terminate his self-representation at any time and have standby counsel proceed on his behalf. Demonstrating that he understood this right, defendant made precisely that election during the phase of the trial on the enhancements. We conclude defendant was fully informed of his potential punishment when he proceeded to trial.

In contending the *Faretta* waiver was inadequate, defendant relies on *U.S. v. Erskine* (9th Cir. 2004) 355 F.3d 1161. There, during a colloquy in open court concerning a *Faretta* waiver, the court asked, "With respect to the possible sentences, do you know what that is?" (*Id.* at p. 1164.) Defendant responded, "*Maximum amount is one year.*" (*Id.* at p. 1165.) In fact, his maximum exposure was five years, and the court did not correct him. (*Ibid.*) Defendant was not informed until the first day of trial that the actual maximum punishment was five years. (*Ibid.*) The *Erskine* court held that this was inadequate because the relevant consideration is what defendant understood at the time he made his *Faretta* waiver. (*Id.* at p. 1169.)

We find *Erskine* to be distinguishable. To begin with, as the court noted, the defendant's maximum exposure in *Erskine* was quintuple what he was told it was until the first day of trial. Here, defendant was immediately informed he was facing 25 years to life on the second complaint, and was told well in advance of trial he was facing 50 years to life plus priors on the combined charges. And unlike in *Erskine*, where defendant's *Faretta* rights were not readdressed after being informed of the actual

8

maximum sentence, here, after being expressly warned about his potential punishment, defendant was told that he could terminate his right to self-representation at any time and have counsel step in for him. The record demonstrates defendant understood that right because he later exercised it. To the extent *Erskine* is not distinguishable, we decline to follow it. (*People v. Zapien* (1993) 4 Cal.4th 929, 989 [decisions of lower federal courts are not binding on state courts].)

Defendant's final contention is that the court violated the prohibition on the ex post facto application of laws by imposing a restitution fine of $240. We agree.

"A statute violates the ex post facto clause when, on its face or as applied, it retroactively '"increase[s] the punishment for criminal acts."' Thus the prohibition on ex post facto laws prevents the government from changing the punishment for a criminal act after the act has been performed. [¶] . . . [¶] . . . [C]ourts have consistently held restitution fines qualify as 'punishment' for purposes of the ex post facto clause." (*People v. Callejas* (2000) 85 Cal.App.4th 667, 670, fns. omitted.)

The court imposed a restitution fine of $240 without any discussion as to why the court selected that amount. Section 1202.4, subdivision (b) states, "In every case where a person is convicted of a crime, the court shall impose a separate and additional restitution fine, unless it finds compelling and extraordinary reasons for not doing so and states those reasons on the record. [¶] (1) The restitution fine shall be set at the discretion of the court and commensurate with the seriousness of the offense. If the person is convicted of a felony, the fine shall not be less than two hundred forty dollars ($240) starting on January 1, 2012 . . . ." The court imposed the fine in September 2012. In the prior version of that section, however, which was applicable at the time defendant committed his crimes, the minimum restitution fine was $200. (Former § 1202.4, subd. (b)(1).)

The People contend this poses no problem because even if the former minimum was $200, the court had discretion to set the fine as high as $10,000. However,

9

the court articulated no reasons for utilizing a fine higher than the minimum. In our view, the reasonable inference is that the court intended to impose the minimum and did so in conformity with section 1202.4, subdivision (b)(1), as it existed at the time of sentencing. Because that section increased the fine after defendant committed his crimes, application of the amended section violated the ex post facto clause. The same considerations apply to the imposition of the parole revocation fine. (See § 1202.45, subd. (a) [parole revocation fine must be set in same amount as restitution fine].)

DISPOSITION

The imposition of restitution and parole revocation restitution fines are reversed with directions to reconsider the fines consistent with this opinion. In all other respects, the judgment is affirmed.

IKOLA, J.

WE CONCUR:


RYLAARSDAM, ACTING P. J.


BEDSWORTH, J.

10