Filed 10/23/25  P. v. Brown CA1/2

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION TWO

<table>
<tr><td>THE PEOPLE,<br><br>        Plaintiff and Respondent,<br><br>v.<br><br>ANDRE VINCENT BROWN,<br><br>        Defendant and Appellant.</td><td>A171881<br><br>(San Francisco County Super. Ct.<br>No. 22013019)</td></tr>
</table>

A jury found defendant Andre Vincent Brown guilty of robbery, assault with a semiautomatic firearm, and other offenses and found he caused great bodily injury in committing the robbery and assault.  Defendant's only claim on appeal is that the trial court erred in denying his request to represent himself under *Faretta v. California* (1975) 422 U.S. 806 (*Faretta*).

We conclude substantial evidence supports the trial court's determination that defendant was incompetent to represent himself.  Accordingly, we affirm.

### FACTUAL AND PROCEDRUAL BACKGROUND

On October 29, 2022, defendant was arrested in this criminal matter, and the next day, the trial court found probable cause to detain him.[1]  On

---

[1] Because the facts of the offenses are not relevant to defendant's appeal, we do not recount them here.  The parties are aware of the evidence

1

November 2, 2022, the trial court appointed the San Francisco Public Defender's Office to represent defendant. A deputy public defender represented defendant at the preliminary hearing in January 2023, after which defendant was held to answer.

*Charges*

On January 24, 2023, the San Francisco County District Attorney filed an eight-count information charging defendant with attempted murder of Miguel B., a security guard for Safeway (Pen. Code,[2] §§ 664, 187, subd. (a); count 1), second degree robbery of Miguel B. (§ 211; count 2), assault with a semi-automatic firearm of Miguel B. (§ 245, subd. (b); count 3), possession of a firearm by a felon (§ 29800, subd.(a)(1); count 4), carrying an unregistered loaded firearm (§ 25850, subd. (a); count 5), carrying an unregistered concealed firearm (§ 25400, subd. (a)(2); count 6), carrying an unregistered concealed firearm in a vehicle (§ 25400, subd. (a)(3); count 7) and misdemeanor resisting arrest (§ 148, subd. (a)(1); count 8).

The district attorney alleged defendant used (§ 12022.5, subd.(a)) and intentionally discharged a firearm (§ 12022.53, subd. (c)) causing great bodily injury (§§ 12022.53, subd. (d), 12022.7, subd. (a)) in the commission of counts 1 through 3 and defendant committed all the offenses while on bail (§ 12022.1, subd. (b)). Six circumstances in aggravation were alleged, and it was further alleged that defendant had two prior convictions for offenses that were serious felonies (§ 667, subd. (a)(1)) and strikes under the Three Strikes Law (§§ 667, subds. (d) and (e), 1170.12, subds. (b) and (c)).

---

presented at trial, and in his appeal, defendant does not challenge the sufficiency of the evidence to support his convictions.

[2] Undesignated statutory references are to the Penal Code.

*Defendant's First* Faretta *Motion is Granted*

At arraignment on February 9, 2023, defendant requested to represent himself (*Faretta* motion), completing a form advisement and waiver of right to counsel. The trial court, Honorable Loretta Giorgi, granted the *Faretta* motion and appointed Catherine Klimek as defendant's investigator.

At a status hearing on March 1, the trial court (Honorable Rochelle East) appointed David Harrison as advisory conflict counsel and scheduled another status hearing for March 16. At the March 16 status hearing, defendant refused to come to court.[3] At a scheduled hearing on April 11, defendant again refused to come to court. Judge East ordered defendant to appear at the next court hearing.

*Defendant Asks for an Attorney*

A little over two months after asking to represent himself, defendant changed his mind. At a hearing on April 19, 2023, defendant told the court he was not provided discovery. Investigator Klimek, however, said she had provided defendant initial discovery, the preliminary hearing transcript and many pages of medical records, and defendant "had so many records that [she] provided him with a large accordion folder." The court (Judge Giorgi) expressed concern that, despite "[r]epeated efforts to assist [defendant] to prepare for trial," "he is not doing so or certainly not processing what is being provided to him sufficiently to represent himself." Addressing defendant, the

_____

[3] Previously, defendant had refused to come to court on four separate court dates in December 2022 and January 2023. Judge East ordered a mental health evaluation under section 4011.6. (Under § 4011.6, subd. (a), if it appears to a judge that a person in jail "may have a mental health disorder," the court is authorized to have the prisoner "taken to a facility for 72-hour treatment and evaluation pursuant to Section 5150 of the Welfare and Institutions Code.") The results of such evaluation, however, do not appear to be part of the appellate record.

3

court stated that it was "becoming more and more of a concern to this Court that you are either intentionally delaying things so that you don't go out [to trial], even though you say you want your speedy trial, or you are not able to keep yourself all the documentation and the evidence that's being provided . . . such that you are able to prepare yourself."

Defendant asked for a lawyer. The court confirmed defendant "no longer want[ed] to represent [him]self" and granted his request for counsel. The court relieved advisory counsel Harrison and investigator Klimek.

The next day, April 20, 2023, defendant refused to come to court, and the trial court (Judge East) ordered that he appear at the next court hearing. On April 21, the trial court appointed attorney Alexandria Carl to represent defendant.

*Defense Counsel Expresses Doubt About Defendant's Competence*

On June 27, 2023, a little over two months after her appointment, attorney Carl declared a doubt as to defendant's competence to stand trial pursuant to section 1368, and the trial court suspended the criminal proceedings.

In January 2024, Carl asked to be relieved as defendant's counsel because she was closing her private criminal defense practice. The trial court relieved Carl as defendant's counsel and continued the case for appointment of counsel. In March 2024, Katherine Isa was appointed to represent defendant.

4

*Court-Appointed Psychiatrist Opines Defendant Has a Mental Disorder and He is Competent to Stand Trial*

Meanwhile, Dr. Jeffrey Gould interviewed defendant in October 2023 and prepared a written evaluation in January 2024.[4] Dr. Gould found defendant "was cooperative with the interview process and spoke in a clear and coherent manner" and opined that defendant was currently competent to stand trial.

Dr. Gould concluded defendant *did* have a mental disorder, and "it was possible that [his] behavior represented signs of him suffering from a psychotic disorder" or "ongoing . . . delusional disorder." But, based on his interview, the doctor opined defendant's lack of cooperation with his attorney was "most likely consistent with dysfunctional interpersonal functioning or one of the personality disorders."

Dr. Gould summarized defendant's jail behavioral health services (BHS) records from 2023. He wrote the following. In January 2023, BHS progress notes reported defendant had a history of delusions of parasitosis; he had been admitted to the San Francisco General Hospital psychiatry ward for 12 days in 2004; defendant stated his public defender, Safeway, and BHS were conspiring against him; and he was given diagnoses of delusion disorder, somatic type, and opioid use disorder. In March 2023, defendant "had some thought derailment and odd content," stating he could "predict storms" and "can feel 'other worldly energy,' " and he was given diagnoses of unspecified schizophrenia spectrum and other psychotic disorder and polysubstance dependence. In April, defendant "endorsed auditory and visual hallucinations" and "persecutory delusions." In May, however, BHS

---

[4] Initially, another psychologist was appointed to examine defendant in June 2023, but after many continuances, the trial court relieved that psychologist and appointed Dr. Gould to evaluate defendant.

noted defendant had no behavioral issues and no impairments in daily functioning, and in July, it was noted that he had not presented with any sign of major mental illness.

*Criminal Proceedings Are Reinstated*

On March 28, 2024, the parties submitted on Dr. Gould's evaluation, and the trial court (Honorable Charles Crompton) found defendant competent to stand trial and reinstated criminal proceedings.

*Defendant Makes a Second* Faretta *Motion*

On May 28, 2024, two months after the criminal proceedings were reinstated, defendant again asked to represent himself. The trial court (Honorable Christine Van Aken) explained that if defendant wanted to represent himself, a psychologist or psychiatrist would be appointed to evaluate whether he was competent to do so.[5] Defendant stated he did not "have any mental health history" and denied he had ever "been to a mental health facility at all." He then described his understanding of certain prior proceedings that was inconsistent with the court record, and he reiterated his desire to represent himself.

The court determined it did not "know whether Mr. Brown is competent to represent himself," based on its "concerns about [defendant's] doubts about the transcript; [¶] And about the hearings; [¶] And the fact that his recollection of our proceedings that have happened so far really don't match at all what the Court's records show."

---

[5] Noting that a doubt previously had been raised about defendant's competence, the trial court explained to defendant, "[W]here there's a question about—where someone does have a history of mental health concerns, this court is required to do a separate inquiry and to figure out . . . are you competent to represent yourself," which is a different issue from whether a person is competent to stand trial.

6

Psychologist David Berke was appointed to evaluate whether defendant was fit to represent himself.

*Court-Appointed Psychologist Opines Defendant Is Not Competent to Represent Himself in Trial*

Dr. Berke interviewed defendant in June 2024 and prepared a written evaluation the same month. He wrote that the court had asked him to "determine whether Mr. Brown suffers from a severe mental illness to the point where he cannot carry out the basic tasks needed to present his own defense without the help of counsel." Dr. Berke concluded defendant "is not competent to represent himself in trial."

Dr. Berke reviewed defendant's jail medical-psychiatric records and Dr. Gould's January 2024 competency evaluation, and he spoke with defendant's current defense attorney and two previous attorneys. Dr. Berke summarized defendant's jail records, writing that defendant had a history of inpatient psychiatric hospitalization, he "was 5150'd in October 2022," and recently had "Psychiatric Emergency Service visits." Defendant "experienced delusional thinking," and he "perceives his oppositional behavior as being a reflection of his intellectual and/or spiritual superiority. 'I know it all, I know more than you.'" The defense attorneys who had worked with defendant reported that defendant was "extremely difficult to work with due to his oppositional behavior, his delusional thinking, his paranoia, and his grandiosity."

During his interview with Dr. Berke, defendant "appeared to be grandiose regarding his ability to represent himself in court, indicating that his judgment is impaired." Noting defendant "was extremely talkative, almost manic" as well as grandiose, Dr. Berke opined that defendant "may suffer from a mood disorder, possibly bipolar disorder." Regarding "his current mental state of mind," Dr. Berke wrote, defendant's "grandiosity, paranoia, and delusional thinking appear to be impairing his judgment."

7

*Defendant's Second* Faretta *Motion is Denied*

On June 28, 2024, Dr. Berke's report was received by the court (Honorable Eric Fleming), and defendant's request to represent himself was denied.

*The Case Goes to Trial and Defendant Is Convicted and Sentenced*

A jury trial began in September 2024. The jury found defendant guilty of counts 2 through 8 and found all enhancement allegations true. The jury could not reach a verdict on count 1 (attempted murder), and the trial court declared a mistrial on that count.

The trial court imposed an aggregate sentence of 30 years to life in prison.

## DISCUSSION

A.    *Relevant Legal Principles and Standard of Review*

The Sixth Amendment right to a defense necessarily includes the "right to self-representation." (*Faretta, supra*, 422 U.S. at p. 819.) "In *Indiana v. Edwards* (2008) 554 U.S. 164 (*Edwards*), however, the United States Supreme Court held that states may, but need not, deny self-representation to defendants who, although competent to stand trial, lack the mental health or capacity to represent themselves at trial—persons the court referred to as 'gray-area defendants.' " (*People v. Johnson* (2012) 53 Cal.4th 519, 523 (*Johnson*).)

In *Edwards*, the Supreme Court observed that mental illness "can vary over time" and "interfere[] with an individual's functioning at different times in different ways," such that a person may be competent to stand trial, "yet at the same time [that person] may be unable to carry out the basic tasks needed to present his [or her] own defense without the help of counsel." (*Edwards, supra*, 554 U.S. at pp. 175–176.) The Court held, "[T]he

8

Constitution permits States to insist upon representation by counsel for those competent enough to stand trial . . . but who still suffer from severe mental illness to the point where they are not competent to conduct trial proceedings by themselves." (*Id.* at p. 178.)

"Although asked to adopt 'a more specific standard,' the high court [in *Edwards*] declined to do so," and the California Supreme Court has likewise chosen not to adopt a more specific standard. (*Johnson, supra*, 53 Cal.4th at p. 530.) Thus, "the standard that trial courts considering exercising their discretion to deny self-representation should apply is simply whether the defendant suffers from a severe mental illness to the point where he or she cannot carry out the basic tasks needed to present the defense without the help of counsel." (*Ibid.*)

When a trial court "doubts the defendant's mental competence for self-representation, it may order a psychological or psychiatric examination to inquire into *that* question[, which is different from the question whether the defendant is competent to stand trial]. To minimize the risk of improperly denying self-representation to a competent defendant, 'trial courts should be cautious about making an incompetence finding without benefit of an expert evaluation, though the judge's own observations of the defendant's in-court behavior will also provide key support for an incompetence finding and should be expressly placed on the record.' " (*Johnson, supra*, 53 Cal.4th at pp. 530–531.)

In reviewing the denial of a *Faretta* motion, "we must defer largely to the trial court's discretion." (*Johnson, supra*, 53 Cal.4th at p. 531.) "The trial court's determination regarding a defendant's competence [to represent himself] must be upheld if supported by substantial evidence." (*Ibid.*)

9

B.    *Analysis*

Defendant contends there was no substantial evidence that he suffered from a severe mental disorder that rendered him incompetent to represent himself at trial.  We are not persuaded.

*Johnson* is illustrative.  There, our high court found no error in the trial court's revocation of defendant Johnson's self-representation status, although Johnson was found competent to stand trial.  (*Johnson*, *supra*, 53 Cal.4th at pp. 524–525.)  The record supported " 'the trial court's conclusion that defendant, although competent to stand trial, was not competent to conduct trial proceedings by himself,' " where, among other things, " '[a] psychologist had testified at the trial-competency hearing that there was "a very strong possibility" that defendant had some type of delusional thought disorder coupled with conspiracy paranoia,' " and the trial court " 'reasonably concluded that defendant lacked the mental capacity to conduct his defense without the assistance of counsel. . . .  The trial judge showed great patience in permitting defendant an opportunity to represent himself but chose to deny further self-representation when it became clear that defendant was accomplishing nothing and might, in the court's opinion, be deprived of a fair trial if allowed to continue his self-representation.' " (*Id*. at p. 532.)

In the present case, there was similar evidence that defendant had a delusion disorder coupled with paranoia.  Dr. Gould noted that defendant believed his public defender, Safeway, and the jail mental health services were all conspiring against him, and defendant had a diagnosis of delusional disorder.  In 2023, defendant had auditory and visual hallucinations and persecutory delusions.  During his interview in June 2024, Dr. Berke found

10

defendant to be grandiose, paranoid, and suffering from delusional thinking, all of which "appeared to be impairing his judgment."[6]

Defendant argues the record lacks substantial evidence supporting the denial of his second *Faretta* motion because Dr. Berke "did not opine as to whether . . . [defendant had] a severe mental illness." However, Dr. Berke wrote that he understood his task was to "determine whether Mr. Brown suffers from a *severe mental illness* to the point where he cannot carry out the basic tasks needed to present his own defense without the help of counsel," and he concluded defendant was not fit to represent himself under that standard. (Italics added.) Dr. Berke's written evaluation provided substantial evidence that defendant was incompetent to represent himself. (See *People v. Gardner* (2014) 231 Cal.App.4th 945, 959–960 [doctor's evaluation concluding the "defendant was incompetent to represent himself at trial" provided substantial evidence to uphold the trial court's denial of a *Faretta* motion].)

To the extent defendant's position is that the record does not contain substantial evidence that he suffers from "severe mental illness" as the phrase is used in *Edwards* and *Johnson*, we disagree. The record contains many references to diagnoses of delusion disorder, unspecified schizophrenia spectrum and other psychotic disorder, and a history of hallucinations and persecutory delusions. Defendant relies on jail reports that he showed no behavioral issues in May 2023 and no signs of major mental illness in July 2023, but these observations do not negate the evidence supporting a

---

[6] In *Johnson*, it was also noted that the defendant " 'conducted himself in a bizarre and disruptive manner' " while he was representing himself. (*Johnson*, *supra*, 53 Cal.4th at p. 532.) Here, although the record does not show bizarre behavior, defendant did often refuse to come to court both when he had an attorney and when he was representing himself.

determination that he had ongoing psychotic and/or delusional disorders. The United States Supreme Court has recognized that mental illness "var[ies] over time" and "interferes with an individual's functioning at different times in different ways." (*Edwards*, *supra*, 554 U.S. at p. 175.) For this very reason, states may "insist upon representation by counsel for those competent enough to stand trial . . . but who still suffer from severe mental illness to the point where they are not competent to conduct trial proceedings by themselves." (*Id.* at p. 178.) That defendant at certain times lacked overt symptoms of mental illness does not mean he necessarily was competent to represent himself through the course of the criminal proceedings.

Finally, we reject defendant's suggestion that Dr. Berke's evaluation does not provide substantial evidence because he mentioned that defendant's proposed defense "lacked plausibility." As the Attorney General responds, this was not the sole reason Dr. Berke found defendant incompetent to represent himself. "Rather Dr. Berke repeatedly listed the mental infirmities of [defendant] that impaired his competency to assist his attorneys." Dr. Berke wrote it was not clear that defendant "fully understood the charges against him" and that defendant "appeared to have a distorted belief regarding his perceived ability to articulate his defense in a court of law." Dr. Berke did not merely believe defendant would present an implausible defense; he concluded defendant was incompetent to represent himself *because of* his mental disorders, including "grandiosity, paranoia, and delusional thinking."

In short, we find substantial evidence supports the trial court's determination that defendant was not competent to represent himself.

## DISPOSITION

The judgment is affirmed

12

_____
Miller, J.

WE CONCUR:


_____
Stewart, P. J.


_____
Richman, J.


A171881, *People v. Brown*