Filed 7/21/15  P. v. Tesfa CA4/1

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| THE PEOPLE,<br><br>　　　Plaintiff and Respondent,<br><br>　　　v.<br><br>MICHAEL TESFA,<br><br>　　　Defendant and Appellant. | D065791<br><br><br><br>(Super. Ct. No. SCD246933) |

APPEAL from a judgment of the Superior Court of San Diego County, Louis R. Hanoian, Judge.  Affirmed.

Stephen M. Hinkle, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Gerald A. Engler, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, Charles C. Ragland and Brendon W. Marshall, Deputy Attorneys General, for Plaintiff and Respondent.

This appeal raises the question of whether the trial court was required to appoint a psychologist to evaluate the defendant before the court permitted the defendant to

continue to represent himself. On this record we will find the trial court appropriately evaluated the defendant and properly allowed him to waive his right to counsel.

Michael Tesfa was charged with forcible rape (Pen. Code,[1] § 261, subd. (a)(2); count 1), kidnap to commit rape (§ 209, subd. (b)(1); count 2), robbery (§ 211; count 3), and false imprisonment (§§ 236, 237, subd. (a); count 4). It was also alleged that during the rape the defendant committed aggravated and simple kidnapping (§ 667.61, subds. (d)(2), (e)(1)). The jury convicted Tesfa of counts 1, 3 and 4. It found Tesfa not guilty of count 2 and found the allegation of kidnapping not true.

The court sentenced Tesfa to a determinate term of 11 years eight months in prison.

Tesfa appeals contending the trial court erred in granting Tesfa's request to represent himself. Specifically, Tesfa alleges that the court should have ordered a psychological examination of Tesfa to determine his mental competence to represent himself. We will find no error and affirm.

STATEMENT OF FACTS

Tesfa does not challenge either the admissibility or the sufficiency of the evidence to support his convictions. Indeed the facts of the offense play no part in the resolution of the issue on appeal. However, to provide background we will adopt the summary of facts set forth in the appellant's opening brief.

---

[1] All further statutory references are to the Penal Code unless otherwise specified.

A. Prosecution Case

On March 18, 2013, Jessica W. had been talking to a college about financial aid, and looking at places to live in downtown San Diego. She bought a four pack of little wine bottles and drank two of them, leaving her "buzzed." She then took the trolley to Old Town, and walked to Fuller Liquor, where she bought two more little wine bottles. She left Fuller Liquor at 7:54 p.m.

Jessica was in the parking lot of Perry's Cafe, drinking some of her wine, when appellant came up to her and the two exchanged pleasantries. Appellant was "charming," and "very, very friendly," and told Jessica she was "beautiful." Jessica was flattered, as she had suffered injuries to her face in a mountain bike accident, and had gone through 10 facial surgeries.

Appellant asked Jessica, "Do you party?" He said he had a room at the Ez 8 Motel, and asked her, "Will you go with me back to the room?" Jessica said, "Okay." She then stated she "never outright told him look I'm not going to the hotel room." Appellant kissed her. She "reciprocated."

The two walked towards Perry's Cafe, drinking some wine. Jessica said that appellant was trying to kiss her neck, and "getting gropey." The two sat on a bench in front of Perry's Cafe and appellant began getting more aggressive. Jessica said, "No, let me go, I'm leaving."

Appellant began pulling Jessica behind the building. She was screaming and appellant told her to "shut the fuck up," and began hitting her multiple times in the head. Appellant dragged Jessica into an alcove behind Perry's Cafe.

3

Jessica managed to dial 911 on her telephone, but then appellant forced her face down into the dirt and her telephone was out of reach. The 911 call was played to the jury. Appellant ripped off all of the clothing Jessica was wearing below the waist and penetrated her vagina with his penis. At one point appellant attempted to put his penis into Jessica's mouth, and touched her breasts. When appellant finished he punched Jessica in the face, picked up her clothes, backpack, and telephone, and ran off in the direction of the riverbeds.

Jessica looked around and found a shirt on the ground. She put her legs through the arm holes and pulled the shirt up as if it were a pair of pants. She then ran back to the liquor store where she was given a phone and she called 911. The 911 call was played to the jury, and Jessica told the 911 operator that she had been raped.

After the police arrived they took Jessica to view a suspect. She identified appellant at the scene as her attacker. Jessica also identified her coat and a few of her other possessions at the scene.

Jessica was taken for a SART exam. She had bruises, scratches, and cuts on her body, as well as some chipped teeth.

Officer Ryan Schultz responded to a call of a sexual assault and drove in the direction the suspect had been reported to flee. He encountered appellant sitting on a curb with two transients. Appellant matched the description from dispatch, was sweating profusely, had his pants up in the front but hanging below his buttocks in the back, and was wearing a black backpack. Dispatch had indicated the suspect had taken a black backpack from the victim. Schultz noticed a pink coat on the ground next to appellant.

4

Appellant saw Schultz and ran. Schultz caught appellant and held him for a curbside lineup.

Edward Childers was one of the two transients sitting next to appellant on the curb. He said as appellant approached him he was sweating and seemed nervous. Appellant asked Childers where he could get "white," a slang term for methamphetamine. A police car showed up and appellant "bolted."

Officer David Mullins responded to a call of a rape victim. He encountered Jessica, who had bruising on her cheek, and a red and swollen face. Mullins transported Jessica to the curbside lineup.

Faafetai Tupea, a front desk clerk at the Ez 8 Motel, stated that she had seen appellant in "the crowd" that hung out in the area; he did not have a room there the night of March 18, 2012.

Claire Nelli is a forensic nurse that conducted the SART exam on Jessica. She stated that Jessica had black eyes and bruising to the eyes, as well as various bruises and abrasions, and glass imbedded in her foot. There were no injuries to the vagina, which Nelli sees in about one third of all the examinations she conducts.

Patti Rankle conducted a sexual assault exam on appellant. She noticed scratches and abrasions on appellant's body.

Amy Zimmer, a criminalist, stated that appellant had no alcohol in his system when tested. Jessica had a .02 blood alcohol level. Given the time Jessica stopped drinking and the time the testing was done, her blood alcohol level could have been as high as .09 at the time of the assault.

5

Ola Bawardi, a toxicologist, stated that appellant had very low levels of methamphetamine and marijuana in his system. Jessica had marijuana in her system.

Brian Lew, a criminalist, stated that he detected the presence of semen in Jessica's vaginal swabs, and male DNA in her external genital swabs. He detected male DNA in her mouth swab, as well as the swabs from her left breast and right breast. Jessica urinated during her SART exam, and toilet paper that she used tested positive for semen and male DNA.

Adam Dutra, a criminalist, stated that appellant could be a "minor contributor" to the DNA in the mouth swab, and the sperm sample DNA matched appellant's DNA.

### B. Defense Case

Appellant denied the charges against him. He stated he was homeless and under the influence of alcohol, but still clear headed, when he encountered Jessica. He stated he and Jessica began talking, then began kissing. She pulled out her breast and he sucked on it, and put his hand on her vagina. The two walked together to the alcove behind Perry's Café where they "did it." It was only afterwards that Jessica got angry and the two argued. Appellant elected to leave, picked up "random stuff" on the ground and left. It was only afterward that appellant realized that he had taken Jessica's backpack, and she must have taken his backpack. Appellant denied beating Jessica up.

### DISCUSSION

Tesfa contends the trial court erred in granting his request for self-representation without first appointing a psychologist to evaluate Tesfa's competence. In order to evaluate this contention we have to first place it in procedural context.

6

## A. Procedural Background

In May 2013 defense counsel requested the court to order a competence evaluation of Tesfa pursuant to section 1368. The court suspended criminal proceedings. Thereafter Tesfa was evaluated by psychiatrist Dr. David Naimak. The doctor concluded Tesfa was competent to stand trial and found that he was not suffering from any severe mental disorder.

On December 16, 2013, Tesfa requested self-representation. The judge then assigned to the case denied the request finding Tesfa's lack of knowledge of the criminal trial process made him not competent to represent himself. Tesfa then requested a hearing to replace counsel. (*People v. Marsden* (1970) 2 Cal.3d 118.) Because of scheduling problems the case was transferred to another judge.

On December 19, 2013, the prosecution advised the court of its concerns about the validity of the previous denial of Tesfa's motion for self-representation.

Thereafter, the court gave Tesfa extensive advice about the problems of self-representation and then inquired about Tesfa's knowledge of the case and his understanding of the consequences of waiving the right to counsel. Tesfa advised he wished to represent himself even in the face of the disadvantages. He said he had read the transcript of the preliminary hearing, went over the discovery, saw the police reports and understood the charges. The court granted Tesfa's request for self-representation.

On January 24, 2014, Stuart Dadmun, a representative of the Office of Assigned Counsel advised the court that he was concerned about Tesfa's competency to represent himself. Dadmun's principal concerns were that Tesfa had not requested services from

Dadmun's office.[2] Dadmun believed Tesfa had not subpoenaed witnesses, reviewed discovery or been to the law library. Dadmun did not tell the court how he was aware of Tesfa's activity or that he had ever met Tesfa. The court met with Dadmun and Tesfa outside the presence of the prosecution.[3] Dadmun continued to express his concerns and suggested the court have Tesfa evaluated.

The court held a lengthy discussion with Tesfa. The court informed Tesfa that the prosecution intended to call 35 witnesses and asked about his preparation. Tesfa advised he had been to the library and seen some discovery. As to witness preparation, Tesfa believed the case was a "he says-she says" and that was how he intended to approach the case.

The court reviewed Dadmun's assertion that Tesfa was on medication. Tesfa disputed he had been under psychiatric care but did acknowledge he had been prescribed medication for paranoia which had been caused by his drug abuse.

After thorough examination of Tesfa the court referred to *People v. Johnson* (2012) 53 Cal.4th 519 (*Johnson*), which the court interpreted as giving the court the power to deny self-representation where the defendant suffered from severe mental problems which would make the defendant unable to engage in self-representation. The

[2]    While we have some doubts as to Dadmun's standing to challenge Tesfa's right to self-representation or to request a psychologist be appointed, we appreciate the court's careful analysis of the issue. Tesfa had already been granted self-representation in December 2013.

[3]    The trial court sealed the transcript of the discussion between the court, Tesfa and Dadmun. We have since issued an order unsealing the transcript.

court stated that it did not find Tesfa suffered from any severe mental impairment and that he was competent to represent himself and denied Dadmun's request to appoint a psychologist.

## B.  Legal Principles

In *Faretta v. California* (1975) 422 U.S. 806, the court determined that the Sixth Amendment right to counsel, included the right of a criminal defendant to self-representation, provided the defendant makes a knowing and intelligent waiver of the right to counsel.  The fact that a trial judge may have doubts as to the defendant's understanding of the law and the person's ability to conduct a criminal trial does not permit a court to deny a defendant the constitutional right to self-representation.

*Indiana v. Edwards* (2008) 554 U.S. 164, 171, departed somewhat from *Faretta's* strict waiver standard and held that where a defendant, although competent to assist counsel, suffers from mental disability such that the person cannot competently represent him or herself, the state may deny self-representation.

The court in *Johnson, supra*, 53 Cal.4th 519, considered the impact *Indiana v. Edwards, supra,* 554 U.S. 164 should have on California courts.  The court there upheld a trial court's decision to deny self-representation to a defendant who was competent to assist counsel, but who the trial court found lacked the mental competency to handle a trial.  (*Johnson, supra,* at p. 525.)  The court held the trial courts can, in the exercise of their discretion, deny self representation where "the defendant suffers from a severe mental illness to the point where he or she cannot carry out the basic tasks needed to present the defense without the help of counsel."  (*Id.* at p. 530.)

The court cautioned that "[t]rial courts must apply this standard cautiously . . . defendants still generally have a Sixth Amendment right to represent themselves" that "may not be denied lightly." (*Johnson, supra,* 53 Cal.4th at p. 531.)

## C. Analysis

It is important to keep in mind that Tesfa was first granted the right to self-representation in December 2013. This appeal does not challenge the December decision. Indeed, it could not because the court carefully admonished Tesfa and carefully considered his reasons for self-representation and found Tesfa made a knowing and intelligent waiver.

It was not until Mr. Dadmun, who had never represented Tesfa, interjected himself into the case on January 24, 2014, that any doubt was raised as to the propriety of "allowing" Tesfa to represent himself. Tesfa had never wavered in his resolve to represent himself, in spite of the obstacles. Nor does the record reflect any strange behavior by Tesfa between the December date and late January when Dadmun appeared in court. From our review of the record, Dadmun's concerns were driven primarily by Tesfa's failure to seek the assistance from Dadmun's office that Dadmun felt he should have done.

The trial court seriously considered the concerns raised by Dadmun and again questioned Tesfa. The court was aware Tesfa had been examined during the section 1368 proceedings and that Tesfa had been found competent to stand trial and, more importantly, that Tesfa did not suffer from any severe mental illness. The court had observed Tesfa, understood the standards set out in *Johnson, supra*, 53 Cal.4th 519 and

found Tesfa did not suffer from any severe mental disturbance and that there was no basis to revoke the grant of self-representation made in the previous December.

Based upon the trial court's personal observations, the record of the section 1368 review, the court's very careful examination of Tesfa, as well as the court's understanding of the direction given in *Johnson, supra,* 53 Cal.4th 519, we are satisfied the trial court properly allowed Tesfa to exercise his constitutional right of self-representation. The fact Mr. Dadmun had a different view of how Tesfa should have handled his case is of no moment on this record.

## DISPOSITION

The judgment is affirmed.

<br>

HUFFMAN, Acting P. J.

WE CONCUR:

<br>

McDONALD, J.

<br>

AARON, J.

11