Filed 10/20/15  P. v. Bates CA2/6

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SIX


| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>DUSTIN JAY BATES,<br><br>    Defendant and Appellant. | 2d Crim. No. B256944<br>(Super. Ct. No. NA097723-01)<br>(Los Angeles County) |


Dustin Jay Bates appeals from the judgment entered after a jury convicted him of petty theft with three prior convictions in violation of Penal Code section 484, subdivision (a), and former Penal Code section 666, subdivision (a).[1]  The jury found true one prior prison term (§ 667.5, subd. (b)) and one prior "strike" allegation.  (§§ 1170.12, subds. (a)-(d), 667, subds. (b)-(i).)  Appellant was sentenced to prison for five years.  Pursuant to section 1170.18, in February 2015 his felony sentence was recalled and he was resentenced to a misdemeanor.  He was given credit for time served and placed on parole for one year.

Appellant contends that the trial court (1) erroneously denied his *Marsden* motion to discharge appointed counsel and substitute another appointed attorney (*People v. Marsden* (1970) 2 Cal.3d 118), and (2) erroneously granted his *Faretta*

---

[1] All statutory references are to the Penal Code.

motion for self-representation.  (*Faretta v. California* (1975) 422 U.S. 806 [95 S.Ct. 2525, 45 L.Ed.2d 562]. )  We affirm.

*Facts Relating to the Marsden Motion*[2]

On January 16, 2014, appellant was arraigned on the information.  The minutes show that C. Bonillo was standing in for Deputy Public Defender Florentina Demuth, appellant's counsel of record.  One week later, Demuth had a video conference with appellant while he was in jail.

The *Marsden* hearing occurred 21 days after appellant's arraignment.  During the period between the video conference and the *Marsden* hearing, Demuth had not spoken to her client.  Appellant complained that at the video conference he had been unable to communicate with Demuth because the equipment was not working.  He stated, "[I]f she doesn't know the video machine ain't working properly . . . I don't want her as my attorney."  Appellant also complained that Demuth had "decided to . . . have a doctor from Department of Mental Health come talk to me."  He accused Demuth of "helping . . . the prosecutor, . . . having psychiatric professionals come to try to doubt my credibility and, basically, tarnish my word."  Appellant said that he had "nothing against [Demuth] personally" and that she was "a nice lady."

The trial court responded that Demuth was "not responsible for the video conference machine not working."  It informed appellant that his counsel at the arraignment, Ms. Bonillo, had requested the psychological evaluation based on her "brief contact" with him.  "So Ms. Demuth had nothing to do with that.  That's Ms. Bonillo."  The court assured appellant that "[t]here is no stigma to a psych evaluation."

 Appellant continued to insist that he "couldn't hear or talk" to Demuth during the video conference.  He accused Demuth of failing to "follow up and clarify" the communication problem.  Appellant asked, "[W]hat is her defense to that point?"

In her defense, Demuth declared, "[Appellant] is not telling the truth."  She explained that nothing was wrong with the video equipment.  "He could hear me just

[2] We omit a summary of the facts underlying appellant's petty theft conviction because they are not relevant to the issues on appeal.

fine."  The problem was that appellant "did not want to answer any of my questions. . . . He didn't want to listen to me going over the facts."  Demuth continued, "[T]hat he's not cooperating with his attorney and not answering my questions and not wanting to go over the facts of the case is not my fault. . . .  His failure to listen to his attorney is not a basis for a *Marsden* motion."

Appellant replied: "[T]here's conflict here.  She's accusing me of lying.  I'm accusing her of lying.  This is a[n] obvious conflict of interest for her to represent me in trial."

The trial court found "that there is no irreconcilable conflict" and denied the *Marsden* motion.

### *The Marsden Motion Was Properly Denied*

When a defendant seeks to discharge his appointed counsel and substitute another appointed attorney, he " ' "is entitled to relief if the record clearly shows that the first appointed attorney is not providing adequate representation [citation] or that defendant and counsel have become embroiled in such an irreconcilable conflict that ineffective representation is likely to result." ' [Citation.]  The decision whether to grant a requested substitution is within the discretion of the trial court; appellate courts will not find an abuse of that discretion unless the failure to remove appointed counsel and appoint replacement counsel would 'substantially impair' the defendant's right to effective assistance of counsel.  [Citation.]"  (*People v. Roldan* (2005) 35 Cal.4th 646, 681, disapproved on other grounds in *People v. Doolin* (2009) 45 Cal.4th 390, 421, fn. 22.)

"[T]he trial court acted within its discretion when it concluded the purported conflict between [appellant] and his lawyer was not ' "such an irreconcilable conflict that ineffective representation is likely to result." ' [Citation.]  As the record shows, [appellant] himself created the conflict."  (*People v. Roldan*, *supra*, 35 Cal.4th at p. 682.)  Demuth was not to blame for the alleged malfunctioning of the video equipment.  Moreover, the trial court credited Demuth's statement that nothing was wrong with the equipment and that appellant had refused to listen to her or answer her

3

questions. (*People v. Jones* (2003) 29 Cal.4th 1229, 1245-1246 [" 'To the extent there was a credibility question between defendant and counsel at the hearing, the court was "entitled to accept counsel's explanation" ' "].) Ms. Bonillo, not Demuth, was responsible for the psychological evaluation. Appellant acknowledged that his belief that Demuth had been responsible "was a misunderstanding." In any event, the evaluation was not improper.

"The record in the instant case amply supports the conclusion that whatever breakdown occurred between [appellant] and his counsel was caused by defendant's intransigence and failure to cooperate. Such a showing is insufficient to support a motion to substitute appointed counsel. [Citation.]" (*People v. Lindsey* (1978) 84 Cal.App.3d 851, 860.) "[A] defendant may not force the substitution of counsel by his own conduct that manufactures a conflict. [Citation.]" (*People v. Smith* (1993) 6 Cal.4th 684, 696-697.)

*Facts Relating to Appellant's Faretta Motion*

Before the trial court ruled on the *Marsden* motion, appellant told the court that he would "like to go pro per after this *Marsden* motion if possible." After the denial of the *Marsden* motion, appellant said that he wanted to represent himself "because we're [appellant and Demuth are] obviously conflicting." The court remarked, "There is a suspicion in my mind that there is something wrong mentally in the processing of your brain." Appellant protested: "I'm tired. I just got off the bus. I get car-sick. I was on the bus about an hour-and-a- half on the way over here. I am kind of car-sick."

After questioning appellant and warning him of the dangers of self-representation, the court asked, "Knowing all that, do you give up your right to have assistance of counsel? Appellant replied: "Yes sir. Because I - - we are conflicted." The court responded, "All I need is yes or no." Appellant said, "Yes, Sir." The court inquired, "So you give up your right to have free assistance of counsel?" Appellant replied, "Yes, sir." The court found that appellant had waived his right to counsel and had invoked his right to represent himself.

4

Approximately one month after the trial court had granted appellant's *Faretta* motion to represent himself, the court "declar[ed] a doubt as to [his] mental competency to stand trial." It appointed a psychologist to evaluate appellant as to this issue. At a subsequent hearing, the court found him mentally competent to stand trial based upon the psychologist's report.

*Appellant Unequivocally Invoked His Right to Represent Himself*

Our California Supreme Court has "emphasized the importance of an unequivocal request for self-representation." (*People v. Valdez* (2004) 32 Cal.4th 73, 98.) Appellant argues that his request for self-representation was equivocal.

" 'In determining . . . whether [appellant] invoked the right to self-representation, we examine the entire record de novo. [Citation.]' [Citation.]" (*People v. Stanley* (2006) 39 Cal.4th 913, 932.) The record shows that appellant made an unequivocal invocation of his right to self-representation. He " ' "articulately and unmistakably" ' demand[ed] to proceed in propria persona. [Citations.]" (*People v. Valdez*, *supra*, 32 Cal.4th at p. 99.)

In support of his argument that his request for self-representation was equivocal, appellant cites *People v. Scott* (2001) 91 Cal.App.4th 1197. There, the defendant made a *Marsden* motion four days before trial was set to begin. After the trial court had denied the motion, the defendant immediately made a *Faretta* motion to represent himself. The trial court denied the *Faretta* motion because the defendant had insisted that he would need a continuance to prepare for trial. The appellate court concluded that "the trial court did not err by denying [the defendant's] untimely and equivocal *Faretta* request." (**Id**., at p. 1205.)

The *Scott* court found the request to be equivocal because the defendant had made it "*immediately after* the trial court denied his *Marsden* motion, and [his] subsequent comments suggest he made the *Faretta* motion only because he wanted to rid himself of appointed counsel." (*People v. Scott*, *supra*, 91 Cal.App.4th at p. 1205, fn. omitted.) "[I]t appeared [that the defendant] made the *Faretta* motion out of frustration at having his *Marsden* motion denied, rather than from a genuine desire to

represent himself." (***Id***., at p. 1206.) Relying on *Scott*, appellant contends that his "immediate request to represent himself at the denial of his *Marsden* motion demonstrates his request for self-representation was equivocal and only the product of his annoyance and frustration at the denial of his request for appointed counsel . . . ."

 *Scott* is distinguishable. The *Scott* court concluded that the trial court had properly *denied* the defendant's motion for self-representation. The *Scott* court did not consider whether the trial court would have erred if it had instead granted the motion. Here, in contrast to *Scott*, the trial court *granted* appellant's motion for self-representation. Moreover, before the trial court ruled on appellant's *Marsden* motion, appellant said that he would "like to go pro per after this *Marsden* motion if possible." Appellant's statement suggests that, unlike the defendant in *Scott*, he intended to make a *Faretta* motion to represent himself irrespective of whether his *Marsden* motion was granted.

   *Appellant Has Not Shown that the Trial Court Abused Its Discretion in Not*
   *Conducting an Inquiry into His Mental Competence to Represent Himself*

 Appellant contends: "The trial court erred in allowing [him] to represent himself without exercising its discretion to determine [his] competency to represent himself." "[T]he trial court's failure to conduct an appropriate inquiry into [his] mental competence [to represent himself] left [him] without competent counsel, and resulted in an unfair trial."

 The trial court inquired into appellant's mental competence to stand trial. It appointed a psychologist to evaluate appellant concerning this issue. Based on the psychologist's report, the court found appellant mentally competent to stand trial. Appellant did not object below to this finding and does not challenge it on appeal.

 Because appellant was competent to stand trial, the trial court did not violate his federal constitutional rights when it granted his request to represent himself. " '[T]he federal constitution is not violated when a trial court permits a mentally ill defendant to represent himself at trial, even if he lacks the mental capacity to conduct the trial proceedings himself, if he is competent to stand trial and his waiver of counsel is

6

voluntary, knowing and intelligent.' [Citation.]" (*People v. Taylor* (2009) 47 Cal.4th 850, 878.)

Nevertheless, California courts have discretion to deny a request for self-representation if "the defendant suffers from a severe mental illness to the point where he or she cannot carry out the basic tasks needed to present the defense without the help of counsel." (*People v. Johnson* (2012) 53 Cal.4th 519, 530.) "A trial court need not routinely inquire into the mental competence of a defendant seeking self-representation. It needs to do so only if it is considering denying self-representation due to doubts about the defendant's mental competence." (***Ibid***.)

"The burden is on the party complaining to establish an abuse of discretion . . . ." (*Denham v. Superior Court* (1970) 2 Cal.3d 557, 566.) Appellant has not provided us with sufficient information to decide whether the trial court abused its discretion in not conducting an inquiry into his mental competence to represent himself. The record on appeal does not include the psychologist's report on appellant's mental competence to stand trial. It is reasonable to infer that this report was relevant to his mental competence to represent himself. The report was admitted into evidence as the court's exhibit number 1, but neither party has requested that the exhibit be transmitted to this court. (Cal. Rules of Court, rule 8.224.) Appellant does not discuss the contents of the report. Based on its contents, the trial court may have acted within its discretion.

Because appellant has neither provided the psychologist's report to this court nor discussed its contents, he has not carried his burden of showing that the trial court abused its discretion. " 'A judgment or order of the lower court is *presumed correct*. All intendments and presumptions are indulged to support it on matters as to which the record is silent, and error must be affirmatively shown.' " (*Denham v. Superior Court*, *supra*, 2 Cal.3d at p. 564.) "To preserve . . . a point for review on appeal, a defendant must of course provide an adequate record. [Citations.]" (*People v. Gordon* (1990) 50 Cal.3d 1223, 1250, disapproved on other grounds in *People v. Edwards* (1991) 54 Cal.3d 787, 835.) "In the absence of an affirmative showing that the trial court erred in [not conducting an inquiry into appellant's mental competence to represent himself],

7

there simply is no error for this court to review."  (*People v. Blackwood* (1983) 138
Cal.App.3d 939, 949.)

*Disposition*

The judgment is affirmed.

<u>NOT TO BE PUBLISHED.</u>

YEGAN, J.

We concur:

GILBERT, P. J.

PERREN, J.

Richard R. Romero, Judge

Superior Court County of Los Angeles

_____

California Appellate Project, under appointment by the Court of Appeal, Jonathan B. Steiner, Executive Director and Richard B. Lennon, Staff Attorney, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Lance E. Winters, Senior Assistant Attorney General, Stephanie A. Miyoshi, David F. Glassman, Deputy Attorneys General, for Plaintiff and Respondent.