Filed 1/26/24  P. v. Ferrell CA2/8

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION EIGHT

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>SAMUEL FERRELL,<br><br>    Defendant and Appellant. | B320625<br><br>Los Angeles County<br>Super. Ct. No. MA081838-01 |

APPEAL from a judgment of the Superior Court of Los Angeles County.  Robert G. Chu, Judge.  Affirmed.

Katja M. Grosch, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Assistant Attorney General, Steven D. Matthews and Ryan M. Smith, Deputy Attorneys General, for Plaintiff and Respondent.

_____

Samuel Ferrell challenges the sufficiency of the evidence to support his conviction for assault with a semiautomatic weapon (Pen. Code,[1] § 245, subd. (b)).  He also contends the trial court erred by imposing upper term sentences based on factors not found true by a jury or admitted by him and erred by failing to dismiss the section 12022.5 enhancement.  We affirm the judgment.

## FACTUAL AND PROCEDURAL BACKGROUND

Two shootings took place in the parking lot of the Sahara Motel in Lancaster on the evening of August 3, 2021.  Surveillance video from the first shooting captured a white Kia parking in the lot.  A Mercedes then entered the parking lot and parked two car lengths away from the Kia.  Three men emerged from the Mercedes and appeared to be looking at a car between the Kia and the Mercedes while they talked.  A man stepped out of the Kia's passenger seat, in close proximity to the three men, and exchanged words with them.  The man re-entered the Kia and the others walked back toward the Mercedes.  As the Kia drove away, the video captured three muzzle flashes of a firearm being fired from the Kia's passenger side.  The three men ducked behind the Mercedes and then fired back.

The video from the second shooting, approximately two hours later, showed a white car, a black sport utility vehicle, and a white Kia arriving at the motel and backing into parking spaces.  A man wearing a hoodie sweatshirt walked into the parking lot.  His right arm or hand was in his sweatshirt, pocket,

---

[1]     Undesignated statutory references are to the Penal Code.

or waistband. Two other men approached from the same direction.

The Kia began to move, and immediately shots were fired out of the Kia through its windshield. The man in the hoodie ducked and then shot twice at the Kia as it drove away. The man fled, and the black sport utility vehicle and the white car left the parking lot.

Deputies found shell casings, bullet fragments, and several vehicles with bullet holes in the parking lot. They recovered many shell casings from the parking lot.

A.   *Lessier Interview*

One week later deputies interviewed Ferrell's girlfriend Mikayle Lessier. Lessier confirmed she owned the white Kia and she had been present for the shootings. She said she drove Ferrell to the Sahara Motel to go to the room of his friend Ricky. Ferrell argued with a man in the parking lot. Frightened, Lessier told Ferrell she was leaving. Ferrell got back into the Kia, and as Lessier began to drive away, he leaned out the passenger window and fired a gun two or three times. Lessier said people fired back.

Lessier told the deputies she was screaming and crying; she wanted to drop Ferrell off, and they began to argue. They went to Ferrell's grandmother's house, where Ferrell argued with his grandmother. They drove to a gas station and met up with Ricky and his sister. Together they had three cars: the Kia, a Mercedes truck belonging to Ricky's sister, and a white car.

According to Lessier, she wanted to go home, but instead she drove Ferrell back to the motel after Ricky's sister refused to give Ferrell a ride. As they sat in the Kia in the parking lot, Lessier saw a man walking toward her car; Ferrell, using his

phone, did not notice him. Lessier yelled and began to drive away. As she drove, Ferrell and the man exchanged gunfire. Ferrell shot through the Kia's windshield. A deputy and Lessier discussed Ferrell's gun:

Q. "What kind of gun was it?"

A. "I think it was black. I don't know exactly [unintelligible]."

Q. "OK. Handgun? OK. Do you know the difference between like a semi-automatic or like a cowboy gun? Like the revolver? You know [the] type like this?"

A. "I don't think it was a cowboy gun."

Q. "No wheels. OK. So it look like this?"

A. "It was black."

Q. "It was a handgun, right?"

A. "Yeah."

Q. "OK."

A. "It was black."

Q. "Shell casings come out? The little . . . brass things?"

A. "I wanna say yeah but . . . I was just driving."

B. *Charges and Trial*

By amended information, Ferrell was charged in counts 1 and 2 with attempted murder (§ 664/187, subd. (a)), in count 3 with assault with a semiautomatic firearm (§ 245, subd. (b)), in count 4 with possession of a firearm by a felon (§ 29800, subd. (a)(1)), and in counts 5 and 6, with discharging a firearm with gross negligence (§ 246.3, subd. (a)). For counts 1, 2, and 3, it was alleged that Ferrell personally used a firearm (§ 12022.5, subd. (a)). For counts 1 through 4, it was alleged that Ferrell had a prior serious and/or violent felony conviction within the meaning of the "Three Strikes" law (§§ 667, subds. (b)-(j),

4

1170.12). The amended information alleged numerous aggravating circumstances listed in California Rules of Court, rule 4.421.

At trial, Lessier testified she was in a relationship with Ferrell and did not want to testify. She testified that on August 3, 2021, she drove Ferrell to the Sahara Motel, where he was supposed to meet a friend and retrieve some possessions. They parked the Kia and waited. Ferrell's friend did not appear, and, eventually, Lessier needed to leave.

Lessier testified three men she did not recognize approached the area of her car. On direct examination, she testified Ferrell spoke with them briefly and peacefully. On cross-examination, Lessier testified it seemed to her the three men were behaving confrontationally but she did not see anything in their hands. On redirect, she testified she did not know whether the tone of the exchange between the three men and Ferrell was casual or aggressive because she was on her phone at the time.

Lessier testified she drove away, and, as she did, she heard bullets hitting her car. She did not see Ferrell fire a gun. Lessier was terrified.

Later they returned to the motel because Ferrell still wanted to retrieve his possessions. Lessier thought the people who shot at them had probably left.

Lessier testified a white car and a black car went with them to the motel. According to Lessier, they were about to leave when a man dressed in black and wearing a ski mask, with his hands on his belt, started to walk toward the front of Lessier's car. Ferrell did not see the man approaching the car because he

5

was texting his friend.  Two other men approached the car as well.

According to Lessier, she panicked and drove away.  The men shot at her car multiple times.  She heard gunshots, but she did not know if they came from inside or outside her car.  She did not see Ferrell pull out a gun.  Lessier's windshield was fine after the first shooting, but after the second shooting, she saw a hole in the middle of the front windshield.

Lessier testified she spoke with deputies about a week after the shootings.  She denied telling them that Ferrell had an argument with the men who approached the car before the first shooting.  She denied saying Ferrell shot a gun from the passenger side of the car.  She denied saying Ferrell shot his gun through the windshield of her car during the second incident.  She did not recall whether she said she saw Ferrell with a gun because the deputies were threatening her life and she was scared.  Lessier said the deputies threatened her with arrest and the loss of her child if they did not tell them what they wanted to hear, and because she was being threatened, she did not recall many things that were said at the police station.

Lessier acknowledged she had previously testified that during the first incident she heard gunshots but did not know if Ferrell actually shot a gun; she heard shots hitting her car but did not hear anything coming from the inside of her car.  Lessier had also testified she did not know how her windshield was damaged.

Prior to the verdict, Ferrell waived his right to a jury trial and elected a court trial on his prior convictions and on aggravating and mitigating factors for sentencing.

Ferrell was acquitted of both attempted murder counts and convicted on the remaining charges. The jury found true the allegation that Ferrell personally used a firearm in count 3. The court found Ferrell had suffered five prior convictions, one of which was a strike offense within the meaning of the Three Strikes Law. The trial court denied Ferrell's motion to strike his strike prior. The court sentenced him to the upper term of 9 years on count 3, doubled pursuant to the Three Strikes Law, and it imposed and stayed sentences on the other offenses pursuant to section 654. The court also sentenced Ferrell to 10 consecutive years for the personal use of a firearm, for a total sentence of 28 years in state prison. Ferrell appeals.

## DISCUSSION

I.      *Sufficiency of the Evidence on Count 3*

Ferrell contends the evidence was insufficient to support his conviction on count 3, assault with a semiautomatic weapon. " ' "When considering a challenge to the sufficiency of the evidence to support a conviction, we review the entire record in the light most favorable to the judgment to determine whether it contains substantial evidence—that is, evidence that is reasonable, credible, and of solid value—from which a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt." [Citation.] We determine "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." [Citation.] In so doing, a reviewing court "presumes in support of the judgment the existence of every fact the trier could reasonably deduce from the evidence." ' " (*People v. Rangel* (2016) 62 Cal.4th 1192, 1212–

7

1213.) We conclude the evidence was sufficient to support the conviction on count 3.

Ferrell claims "the prosecution did not introduce any evidence whatsoever that could support a finding that the firearm used by appellant was a semiautomatic," but this is not the case. In the recorded interview of Lessier played for the jury at trial, when the deputy asked if she knew the difference between a semiautomatic gun and a "cowboy gun," which he indicated was "[l]ike [a] revolver," Lessier said she did not think Ferrell's gun was a cowboy gun. From this it may be inferred Ferrell had the other type of gun the deputy mentioned, a semiautomatic gun. To confirm this, the deputy asked if shell casings popped out of the gun when it fired, and Lessier gave a positive, though equivocal, answer. Viewing Lessier's testimony in the light most favorable to the prosecution, as we must, a jury could reasonably conclude beyond a reasonable doubt the gun Ferrell fired was semiautomatic.

Citing *People v. Cruz-Partida* (2022) 79 Cal.App.5th 197, 202, fn. 2, Ferrell asserts that "[e]vidence sufficient to support a conviction for use of a semiautomatic firearm includes a photograph of the weapon and bullet casings found at the scene." As the appellant in *Cruz-Partida* did not challenge the sufficiency of the evidence that his weapon was semiautomatic (*id*. at p. 206), in no way does that decision establish what evidence is necessary or sufficient to establish a weapon was semiautomatic. Cases are not authority for propositions not considered. (*People v. Johnson* (2012) 53 Cal.4th 519, 528.)

## II.   *Imposition of Upper Term Sentences*

Ferrell argues the trial court impermissibly sentenced him to the upper term sentences on count 3 and the firearm enhancement.  We disagree.

### A.   *Sentencing*

Before sentencing, Ferrell filed a motion to dismiss his prior strike and a sentencing memorandum under a single cover. In the sentencing memorandum, Ferrell set forth the law that the court may impose an upper term sentence only when circumstances in aggravation of the crime justify a term of imprisonment exceeding the middle term, and the facts underlying those circumstances have been stipulated to by the defendant or found true beyond a reasonable doubt by a jury or the judge.  (§ 1170, subd. (b)(2).)  Ferrell evaluated the applicability of various aggravating and mitigating factors set forth in the California Rules of Court, conceding the applicability of various aggravating factors and arguing the presence of multiple mitigating factors.

On May 25, 2022, the court found true five prior offenses alleged in the amended information and concluded one constituted a strike.  The court proceeded to sentencing and Ferrell informed the court that he had been seen in an outpatient clinic for mental health issues and had been taking medication for depression; documentation of this was provided to the People. Ferrell's mother, in addition to describing Ferrell's good character, his desire to change, and his new child, advised the court Ferrell suffered "really bad head trauma" from a fall when he was a baby.  She reported Ferrell had "problems" as a result:

9

his head swelled, he had "swelling on his brain," and he suffered nightmares as a child.

The People argued for the maximum sentence. They argued Ferrell posed a great danger to the community, reviewed the convictions found true, which featured several crimes committed shortly after Ferrell was paroled or released from custody, and argued it was "clear that not long after he is released he commits additional crimes." The People argued that in the current offenses, Ferrell had shot at multiple people, multiple times; he endangered not only his victims but bystanders and Lessier; and he attempted to dissuade Lessier from testifying. They argued Ferrell lacked remorse, endangered the community and his loved ones, and believed the law did not apply to him. The People acknowledged Ferrell's youth at the time of the offense (31 years old), his young child and his loving family, but argued no mitigating factor warranted anything less than the maximum sentence.

The court said it had reviewed the court file, the probation report,[2] Ferrell's criminal history, and Ferrell's sentencing memorandum, which it praised for its detail. The court then spoke at length, frequently without distinguishing between factors relevant to the motion to strike Ferrell's strike prior versus aggravators and mitigators.[3] The court said it had

---

[2] The parties stipulated the court could use the probation report for sentencing.

[3] "Factors in aggravation and mitigation listed in the California Rules of Court may be relevant to the court's inquiry" when considering a request to strike a prior strike. (*People v. Dryden* (2021) 60 Cal.App.5th 1007, 1029.)

considered the objectives of sentencing and whether Ferrell had a record of committing similar crimes or crimes of violence. It discussed similarities between the instant case and Ferrell's prior strike case and mentioned his prior convictions for possession of firearms. The court said, "It appears [Ferrell] is prone to violent behavior making him a threat to the safety and wellbeing of others."

The court said it did not believe Ferrell participated in the instant offense due to provocation, coercion, or duress not amounting to a defense. The court noted that in the first shooting, Ferrell shot first. While the court acknowledged the defense view that Ferrell acted in self-defense in the second incident, it was not persuaded because Ferrell chose to return to the location after the first incident, bringing a firearm and friends, and he again chose to fire first.

The court said Ferrell was not young and without a significant criminal record. Listing Ferrell's five prior offenses, the court said, "The defendant has shown no signs of ceasing his criminal behavior. Instead it appears that his behavior is increasing in severity and seriousness."

The court said it had "thought about the nature, seriousness and the circumstances of this crime in this case." Noting Ferrell had chosen to fire his gun in an area with bystanders, voluntarily returned to the location, and again fired his gun with conscious disregard for the safety of others, the court found he would be a danger to others if he were not in prison.

The court acknowledged Ferrell's strike was nine years old but observed Ferrell had continued to commit crimes since then. It expressly found Ferrell had "a long and continuous criminal

11

career," only interrupted by incarceration, and his crimes increased in seriousness and severity throughout the years. It ruled, "Based on all the information that the court has been provided and based on the same reasoning the court has just stated, the court is not satisfied on how dismissing the defendant's prior strike allegation would be in the interest of justice and; therefore, defense motion to strike his prior strike will be denied."

The court found the circumstances in aggravation "far outweigh any mitigation." Based on "the court's discretion, based on the nature of the case, defendant's criminal history, and the reasonings the court has just cited," the court imposed upper term sentences on count 3 and the associated enhancement.

B. *Applicable Law*

Prior to January 1, 2022, former section 1170, subdivision (b) provided that when a defendant was sentenced to prison for a crime with a sentencing triad, the choice of the appropriate term rested within the sound discretion of the trial court. Effective January 1, 2022, Senate Bill No. 567 (2021–2022 Reg. Sess.) (Senate Bill No. 567) amended former section 1170 to provide that a court "shall, in its sound discretion, order imposition of a sentence not to exceed the middle term, except as otherwise provided in paragraph (2)." (§ 1170, subd. (b)(1); Stats. 2021, ch. 731, § 1.3.) In turn, subdivision (b)(2) of the statute provides that "[t]he court may impose a sentence exceeding the middle term only when there are circumstances in aggravation of the crime that justify the imposition of a term of imprisonment exceeding the middle term, and the facts underlying those circumstances have been stipulated to by the defendant, or have been found true beyond a reasonable doubt at trial." (§ 1170,

12

subd. (b)(2).) Thus, the legislation makes the middle term the presumptive sentence unless aggravating circumstances admitted or proven beyond a reasonable doubt justify the upper term. (*People v. Fox* (2023) 90 Cal.App.5th 826, 830–831.)

C. *Briefing History*

Ferrell's opening brief includes an argument entitled, "The Trial Court Erred in Imposing the High Term Based on Factors Neither Found True by the Jury Nor Admitted by Appellant." The parties' briefing on this issue can only be described as deficient. First, neither Ferrell nor the People disclosed that Ferrell had waived the right to a jury trial and selected a court trial on aggravating and mitigating factors. Second, the People appeared unaware Ferrell had been sentenced after the effective date of Senate Bill No. 567; their arguments were founded on the inaccurate premise that Ferrell had been sentenced under an earlier sentencing scheme.

We therefore requested supplemental briefing on the following question: "Recognizing that appellant was sentenced in May 2022, after the effective date of the amendments to Penal Code section 1170 made by Senate Bill No. 567 (Stats. 2021, ch. 731, § 1.3), what is the effect of appellant's express waiver of a jury trial on aggravating factors (Reporter's transcript, p. 204) on his argument that the imposition of the upper term sentence violated Penal Code section 1170, subdivision (b)(2) because the factors relied upon by the trial court to justify the upper term were neither admitted by appellant nor found true by a jury?"

The People did not respond. In supplemental briefing, Ferrell argued that although he waived a jury trial on aggravating factors, the trial court relied on impermissible

13

factors in imposing the upper term because he had the right to a court trial with findings made beyond a reasonable doubt.

      D.    *Ferrell's Contentions*

          1.    <u>Initial Briefing</u>

It is difficult to discern arguments from the opening brief because Ferrell's assertions are general and conclusory, he does not acknowledge his waiver of a jury trial, and although there are occasional references to proving aggravating factors to the jury or the court, he generally appears to argue that the absence of a jury trial requires the sentence to be vacated, as in his contention that the purported error was not harmless because "it cannot be concluded with sufficient certainty that some of the aggravating factors on which the trial court relied would have been found true if submitted to the jury." Ferrell then admitted in his supplemental brief that he waived his right to a jury trial on aggravating circumstances. Therefore, we do not address contentions that the aggravators should have been tried to a jury. To the extent we can identify other coherent arguments from Ferrell's briefing, we address them below.

Ferrell contends the trial court relied on impermissible factors in imposing the upper term. He asserts the court relied on four factors to impose the upper term: (1) five priors, including one strike, and the true finding on the firearm enhancement; (2) Ferrell was not acting in self-defense or in response to provocation in either incident; (3) Ferrell had a lengthy and continuous criminal career and his criminal behavior appeared to be increasing in seriousness; and (4) Ferrell was a danger to others. Ferrell acknowledges that pursuant to section 1170, subdivision (b)(3), the court could properly rely on his prior

14

convictions as a basis for imposing the upper terms. He then lists in a brief, conclusory manner what appear to be four alleged errors.

First, Ferrell argues the court's comment that he was not acting in self-defense or in response to provocation was "baseless" because the jury had been given a self-defense instruction and found him not guilty of two counts of attempted murder. We reject this argument. The acquittals for attempted murder related to the first shooting, but the court imposed the upper term sentences on a count and enhancement that arose from the second shooting. We therefore discern no way in which the self-defense instruction and acquittals on attempted murder charges has any bearing on the conviction and enhancement upon which Ferrell was sentenced, and his single-sentence argument neither acknowledges that the acquittals pertained to a different incident nor provides reasoned argument as to the relevance of the acquittals to the upper term sentences.[4]

Next, Ferrell argues that his "arrests and other convictions, not found true, categorically cannot be used to impose a high term." This argument, presented in a single sentence and supported by neither reasoned argument nor citation to legal authority, fails to demonstrate error. The court found true five

[4]     The court did mention both shootings in its remarks, but it clearly stated that it was considering whether Ferrell participated in "this crime"—that is, count 3, upon which he was sentenced—in self-defense, and the court's reference to the first shooting was very brief, in contrast to its more detailed discussion of whether Ferrell acted in self-defense in the second shooting.

15

prior convictions. In addressing altogether the factors relevant to its decision not to strike a prior strike under *People v. Superior Court* (*Romero*) (1996) 13 Cal.4th 497 (*Romero*) and the factors in aggravation and mitigation, the court discussed Ferrell's "lengthy criminal history," including his history of arrests and convictions and the fact that his prior strike was for the same offense as that committed here. The court concluded Ferrell was "prone to violent behavior[,] making him a threat to the safety and wellbeing of others." The court also found (1) Ferrell had "a long and continuous criminal career" that paused only when he was incarcerated, and (2) his crimes increased in seriousness and severity throughout the years. As Ferrell acknowledges, these findings correspond to California Rules of Court, rules 4.421(b)(1) ("The defendant has engaged in violent conduct that indicates a serious danger to society") and 4.421(b)(2) ["The defendant's prior convictions as an adult or sustained petitions in juvenile delinquency proceedings are numerous or of increasing seriousness"]).

Ferrell asserts, without explanation, argument, or citation to authority, that the "court's finding that appellant's criminal history was lengthy, continuous, and increasing in severity are no longer permissible factors to support imposition of the high term." However, as noted above, California Rules of Court, rule 4.421(b)(2) lists as a factor in aggravation that "[t]he defendant's prior convictions as an adult or sustained petitions in juvenile delinquency proceedings are numerous or of increasing seriousness."

Finally, Ferrell states, "Contrary to the trial court's pronouncement, self-defense is a factor in mitigation and lack thereof is not a factor in aggravation." The court said it did not

16

believe Ferrell had participated in the crime due to provocation, coercion, or duress not amounting to a defense, but we find no indication the court considered the absence of self-defense an aggravating factor. To the contrary, it appears the court was at that point in its remarks addressing possible mitigators, as it next considered whether Ferrell had no significant record of prior criminal conduct, another mitigating factor listed in California Rule of Court, rule 4.423.

### 2. Supplemental Briefing

In his supplemental briefing, Ferrell argues he was entitled to a court trial on each aggravating factor, "with a finding that they were true beyond a reasonable doubt," and the court was required to "rely on factors found true beyond a reasonable doubt pursuant to Penal Code section 1170(b)(2)." To the extent Ferrell is arguing his sentence is invalid because the trial court did not expressly state it was employing a reasonable doubt standard, he has failed to present argument and legal authority to support this claim, and we find it to be without merit.

First, at the sentencing hearing Ferrell did not challenge the imposition of the upper terms on this basis or ask the trial court to clarify whether it was finding any or all of the aggravating factors it relied on true beyond a reasonable doubt. The forfeiture doctrine "appl[ies] to claims involving the trial court's failure to properly make or articulate its discretionary sentencing choices." (*People v. Scott* (1994) 9 Cal.4th 331, 353.) The court's failure to state on the record that it was finding true beyond a reasonable doubt each aggravating factor it relied on in imposing upper terms is precisely the type of sentencing error that is forfeited unless raised in the trial court. (*Id.* at pp. 351–353.) "Routine defects in the court's statement of reasons are

17

easily prevented and corrected if called to the court's attention." (*Id.* at p. 353.)

Second, Ferrell has not identified any authority requiring the court to state on the record that it was finding the aggravating circumstances true beyond a reasonable doubt. Section 1170, subdivision (b)(5) requires the court only to "set forth on the record the facts and reasons for choosing the sentence imposed." (§ 1170, subd. (b)(5).) The California Rules of Court provide that when, as here, "the sentencing judge is required to give reasons for a sentence choice, the judge must state in simple language the primary factor or factors that support the exercise of discretion. The statement need not be in the language of the statute or these rules." (Cal. Rules of Court, rule 4.406(a).) Here, the trial court complied with these authorities by stating on the record the factors it relied on in imposing the upper terms.

Finally, "[i]n the absence of evidence to the contrary, we presume that the court 'knows and applies the correct statutory and case law.' " (*People v. Thomas* (2011) 52 Cal.4th 336, 361.) The record contains no indication the trial court was unaware of the requirements of section 1170, subdivision (b), as amended by Senate Bill No. 567, effective January 1, 2022, at the sentencing hearing in May 2022. In fact, the record affirmatively demonstrates the court knew of the changes in the law, because it expressly advised Ferrell he had a right to a jury trial on aggravating factors. Thus, there is no basis for departing from the presumption that the court knew of and correctly applied section 1170, subdivision (b).

At the close of his supplemental briefing, Ferrell argues, "When the trial court imposed the high term after denying the appellant's *Romero* motion, it added the high term was 'based on the court's discretion, based on the nature of the case, defendant's criminal record and the reasoning the court has just cited.' . . . However, the trial court no longer had that discretion, as it can only rely on factors found true beyond a reasonable doubt pursuant to Penal Code section 1170(b)(2). The 'nature of the case' is too vague to be an aggravating factor [under California Rules of Court, rule] 4.421 even if it was found beyond a reasonable doubt, which it was not. The only valid basis for imposing the high term were the priors, which were indeed found true." Taking the court's statement in isolation, Ferrell presents it as though the court purported to have unfettered discretion to impose upper terms based purely on its assessment of the case. But when the court made this statement, immediately before pronouncing sentence, it had already found true Ferrell's prior convictions and multiple aggravating factors, rejected several mitigating factors, and concluded the factors in aggravation "far outweigh[ed]" any factors in mitigation. Reading the sentence in context, we understand the court to say it had the discretion to select upper terms based on Ferrell's criminal record, the aggravating factors it had found true pursuant to section 1170, subdivision (b)(2), and its conclusion that the aggravators outweighed any mitigators; and that, on the totality of the circumstances, it chose to exercise that discretion to impose upper term sentences. (§ 1170, subd. (b)(2).) Ferrell has not demonstrated error.

III.  *Failure to Dismiss the Section 12022.5 Enhancement*

Senate Bill No. 81 (2021–2022 Reg. Sess.) (Stats. 2021, ch. 721, § 1) amended section 1385 to require courts to consider certain enumerated factors when exercising their discretion to strike sentence enhancements and to afford great weight to the presence of mitigating circumstances listed in the statute, unless the court finds dismissal of the enhancement would endanger public safety.  (§ 1385, subd. (c)(2).)  One of these mitigating factors is, "The application of an enhancement could result in a sentence of over 20 years.  In this instance, the enhancement shall be dismissed."  (Former § 1385, subd. (c)(3)(C)[5].)

Because the imposition of the upper term on the enhancement resulted in a total sentence in excess of 20 years, Ferrell argues former section 1385, subdivision (c)(3)(C) "results in mandatory relief: the statute says that in such an instance, 'the enhancement *shall* be dismissed.' "  This argument has been rejected by numerous courts.  (*People v. Lipscomb* (2022) 87 Cal.App.5th 9, 17–21; *People v. Renteria* (2023) 96 Cal.App.5th 1276, 1284–1291; *People v. Mendoza* (2023) 88 Cal.App.5th 287, 295–297; *People v. Anderson* (2023) 88 Cal.App.5th 233, 239–241, review granted Apr. 19, 2023, S278786.)  We agree with these decisions and reject Ferrell's argument that dismissal was mandatory pursuant to section 1385 because the enhancement resulted in a sentence exceeding 20 years.

---

[5]  This provision was later redesignated subdivision (c)(2)(C). (Stats. 2022, ch. 58, § 15.)

20

In his reply brief, Ferrell acknowledges these authorities but claims he argued in his opening brief that "the fact that the enhancement made appellant's sentence over 20 years *greatly favors* dismissal." To any extent the highly conclusory, six-sentence analysis contained in this section of the opening brief can be construed as raising any legal argument beyond the claim that he is entitled to mandatory relief, it appears to be based on appellant's assertion that his "*Romero* motion included a request that the [s]ection 12022.5 enhancement be stricken pursuant to [s]ection 1385," but the trial court only considered dismissing the prior strike when ruling on the *Romero* motion.

In the trial court, Ferrell's *Romero* motion sought only the dismissal of his prior strike. Even when Ferrell discussed the recent amendments to section 1385, he argued only that the mitigating factors meant "the [c]ourt should dismiss the strike prior." Ferrell did not ask the court to dismiss the section 12022.5 enhancement in the *Romero* motion. It was appropriate for the court, then, to have "only considered dismissing the strike prior, saying nothing about the enhancement," as Ferrell alleges.

Ferrell did mention the enhancement in the portion of his post-trial pleading that constituted the sentencing memorandum. The record demonstrates only that the court did not explain its reasons for not dismissing the enhancement. Section 1385, however, does not require the court to state its reasons when it does not dismiss an enhancement. (See *In re Coley* (2012) 55 Cal.4th 524, 560 ["[A]lthough a trial court is required to state on the record its reasons for striking a prior conviction (§ 1385, subd. (a)), there is no similar statutory requirement of an on-the-record statement of reasons when a court declines to strike a prior"].)

Finally, Ferrell's contention that the enhancement caused his sentence to exceed 20 years greatly favors its dismissal focuses on one isolated phrase to the exclusion of the rest of the statutory language: section 1385 states the proof of mitigating circumstances "weighs greatly in favor of dismissing the enhancement, *unless the court finds that dismissal of the enhancement would endanger public safety*. 'Endanger public safety' means there is a likelihood that the dismissal of the enhancement would result in physical injury or other serious danger to others."  (§ 1385, subd. (c)(2), italics added.)  Ferrell also does not consider in this context the trial court's statements at sentencing that he was "a threat to the safety and wellbeing of others" and he would be a danger to others if he were not in prison.  As Ferrell has not fully stated the applicable law, acknowledged the court's findings, or offered an argument that accounts for the law in full and these facts, Ferrell has failed to present reasoned argument in support of his perfunctory claim.  (*People v. Turner* (1994) 8 Cal.4th 137, 214, fn. 19 ["We discuss those arguments that are sufficiently developed to be cognizable. To the extent defendant perfunctorily asserts other claims, without development . . . they are not properly made, and are rejected on that basis"], abrogated on other grounds by *People v. Griffin* (2004) 33 Cal.4th 536, 555, fn. 5.)

## DISPOSITION

The judgment is affirmed.

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

STRATTON, P. J.

We concur:

WILEY, J.

VIRAMONTES, J.

23