Filed 1/21/25  P. v. Hackworth CA4/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| THE PEOPLE, | |
| Plaintiff and Respondent, | G062513 |
| v. | (Super. Ct. No. 21CF2954) |
| JETHRO JAMES HACKWORTH, | O P I N I O N |
| Defendant and Appellant. | |

Appeal from a judgment of the Superior Court of Orange County, Robert A. Knox, Judge. Reversed and remanded with directions.

Michelle T. LiVecchi-Raufi, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Charles C. Ragland, Assistant Attorney General, Donald W. Ostertag and Robin Urbanski, Deputy Attorneys General, for Plaintiff and Respondent.

Defendant and appellant Jethro James Hackworth appeals his conviction for one count of assault with a deadly weapon. (Pen. Code, § 245, subd. (a)(1); all undesignated statutory references are to this code.) He argues the trial court erred by revoking his right of self-representation under the Sixth Amendment and *Faretta v. California* (1975) 422 U.S. 806, 807 (*Faretta*). He also contends the trial court erred by denying his request to reduce the offense to a misdemeanor pursuant to section 17, subdivision (b). We conclude the trial court violated Hackworth's Sixth Amendment right of self-representation. As the error is reversible per se, we reverse the judgment, and we need not address the second issue raised on appeal.

FACTUAL AND PROCEDURAL BACKGROUND

One morning, a resident of an apartment complex was walking from the complex to the parking lot. Suddenly, he felt something pass his right arm so fast he "could feel the wind" from it and heard a swooshing noise. He looked down and saw an arrow sticking out of the ground. He asked a landscaper standing nearby what had happened. The landscaper pointed to the balcony above the resident's apartment, and the resident saw Hackworth standing there. The resident asked Hackworth, "'What was that?'" Hackworth grabbed a bow and arrow, drew the bow back, and said, "'Quit fucking with me.'" The resident ran back inside his home and called the police.

The Orange County District Attorney charged Hackworth with one count of assault with a deadly weapon. (§ 245, subd. (a)(1).) At his arraignment in early January 2022 before Judge Cynthia M. Herrera, Hackworth asked to represent himself and filed a *Faretta* waiver form.

The first page of the *Faretta* waiver form provided the following advisements: "You have stated to the court that you do not wish to be

2

represented by an attorney even though one would be provided to you at no expense if you cannot afford one and that you wish to represent yourself. In making this decision to be your own attorney have you considered: [¶] 1. It is almost always unwise to represent yourself and in so doing you may conduct a defense which may aid the prosecutor in convicting you of the charge(s)? [¶] . . . [¶] 2. You are not entitled to any special privileges or treatment from the judge. The judge will require you to follow all the technical rules of law[,] procedure[,] and evidence in the defense of your case and in the presentation of your defense. The judge will not aid you in your efforts to defend yourself. [¶] . . . [¶] 3. The prosecutor will be an experienced professional attorney who will not treat you leniently or in any special way even though you do not have the same skills or experience the prosecutor has. It will not likely be a fair contest since the prosecutor will have an advantage by reason of their skill and experience. [¶] . . . [¶] 4. If you are in custody you will receive no more library privileges than those available to other persons representing themselves. You will receive no extra time for preparation. You will have no staff or investigators at your beck and call. [¶] . . . [¶] 5. If you elect to represent yourself you will not be successful in any appeal based upon the quality of your representation. In other words an allegation that you were denied effective assistance of counsel[—]that is[,] you were incompetent as a trial attorney[—]will not result in a new trial with competent counsel. [¶] . . . [¶] 6. If you change your mind during the trial you may not be permitted to obtain a postponement of the case while you obtain an attorney. [¶] . . . [¶] 7. Your right to represent yourself may be ended, an attorney appointed for you, and you may be excluded from the courtroom if you misbehave during this case or seriously disrupt the trial."

On the form, next to each advisement, Hackworth marked the "[n]o" box, denoting he did not consider the advisements. He also circled the "[y]es" box and initialed the circle, indicating he did consider the advisements.

On the second page of the *Faretta* waiver form, Hackworth indicated: he had not represented himself before in a jury trial, he was charged with assault with a dangerous weapon and considered possible defenses, he was unaware of the maximum penalty if he were convicted, he had five years of a college education, he spoke English as his first language, he had been treated for anxiety and depression, he had no difficulty reading or understanding the form, he thought the waiver form was "simple," and he wished to represent himself because he was "telling the truth." In response to the final question, "Do you now wish the court to permit you to represent yourself as your own attorney?" he marked the "[n]o" box.

According to the trial court's minutes, the trial court reviewed the *Faretta* waiver form with Hackworth, informed him of the maximum possible sentence, and advised Hackworth of his rights, including the right of self-representation. Hackworth acknowledged he understood his rights. The trial court found Hackworth understood his rights as explained and the nature of the charge. The trial court proceeded with the arraignment and Hackworth, representing himself, pleaded not guilty and was released on bail.

In mid-January 2022, Hackworth represented himself at a pretrial hearing before Judge Larry Yellin. A few days later, at a preliminary hearing before Judge Jeannie Joseph, Hackworth represented himself and stated he was not ready to proceed. The trial court continued the preliminary hearing. At the scheduled preliminary hearing in March 2022, Hackworth failed to appear, and Judge Herrera issued a bench warrant for his arrest.

4

In November 2022, the Orange County Sheriff's Department executed the warrant. Hackworth represented himself at a hearing before Commissioner Michele Bell. The trial court recalled the warrant, spoke to Hackworth regarding self-representation, and permitted him to continue representing himself.

On December 9, 2022, Judge Larry Yellin held a preliminary hearing. While Hackworth stated he was ready, the prosecution said it was not. The trial court trailed the hearing to December 12, 2022. At the start of the hearing that day, Judge Yellin revoked Hackworth's *Faretta* waiver and appointed him a public defender. Judge Yellin and Hackworth had the following exchange:

"The court: [¶] . . . [¶] Mr. Hackworth, we had a discussion last Friday when the [prosecution] needed to trail your case, and it gave me a lot of concern about your ability to represent yourself. You were focused on a lot of issues that I don't think were related to the case, I'm not sure are legally accurate, and as such, I went back and looked at your original *Faretta* waiver. And that actually adds additional concerns for me to allow you to proceed . . . representing yourself. [¶] So I'm going to appoint the public defender at this time to represent you; okay?

"The defendant: No, that's not okay.

"The court: Okay. Well --

"The defendant: No.

"The court: Okay. But it is --

"The defendant: I'm not going to let them represent me.

"The court: Okay.

"The defendant: I don't want him on my case. Or she. [¶] . . . [¶]

"The court: I just did.

"The defendant: No.

"The court: See, that's the problem. I'm the judge and we're not going to argue about this. And that's one reason why you can't represent yourself because you're talking -- wait. I'm talking. Court reporter needs to take this down. [¶] It's for your own protection as well; okay?

"The defendant: No, it's not.

"The court: No, it's not?

"The defendant: No. I don't want to be part of this circus. I'm tired of this American bullshit. You understand?

"The court: Go ahead.

"The defendant: Did you hear me?

"The court: Yeah. [¶] . . . [¶]

"The defendant: So there's no reason for a representative for me. I'm fine. I can represent myself.

"The court: No, you can't.

"The defendant: Yes, I can.

"The court: Okay. We'll take a recess." (Italics added.)

When the hearing resumed, a public defender represented Hackworth.

In February 2023, a jury found Hackworth guilty as charged. Hackworth moved to reduce the offense to a misdemeanor under section 17, subdivision (b). Judge Robert A. Knox denied the motion. Judge Knox suspended the imposition of sentence, placed Hackworth on formal probation for two years, and ordered him to serve 240 days in jail.

Hackworth timely appealed.

DISCUSSION

On appeal, Hackworth argues the trial court erred by revoking his right of self-representation. The trial court revoked his right of self-representation based on three findings: (1) his "ability to represent" himself; (2) his *Faretta* waiver form; and (3) an exchange with him after it announced it was appointing a public defender to represent him. Hackworth argues he knowingly, intelligently, and voluntarily waived representation. He contends no evidence shows the trial court found him mentally incompetent to represent himself due to a "severe mental illness." (*People v. Johnson* (2012) 53 Cal.4th 519, 530 (*Johnson*).) He also asserts he did not engage in misconduct undermining the integrity of the trial. We agree.

## I.

### GENERAL LEGAL PRINCIPLES

A criminal defendant has a right of self-representation under the Sixth Amendment to the United States Constitution. (*Faretta, supra*, 422 U.S. at p. 807.) The government may not "constitutionally hale a person into its criminal courts and there force a lawyer upon him, even when he insists that he wants to conduct his own defense." (*Ibid.*) "The language and spirit of the Sixth Amendment contemplate that counsel . . . shall be an aid to a willing defendant—not an organ of the State interposed between an unwilling defendant and his right to defend himself personally. To thrust counsel upon the accused, against his considered wish, thus violates the logic of the Amendment." (*Id.* at p. 820.) "An unwanted counsel 'represents' the defendant only through a tenuous and unacceptable legal fiction. Unless the accused has acquiesced in such representation, the defense presented is not the defense guaranteed him by the Constitution, for, in a very real sense, it is not *his* defense." (*Id.* at p. 821.) "'[T]he core of the *Faretta* right' is that

'the *pro se* defendant is entitled to preserve actual control over the case he chooses to present to the jury.'" (*People v. Espinoza* (2016) 1 Cal.5th 61, 77.)

## II.

## THE TRIAL COURT ERRED BY REVOKING HACKWORTH'S
## RIGHT OF SELF-REPRESENTATION

*A. The* Faretta *Waiver Was Knowing, Intelligent, and Voluntary*

"'A knowing and intelligent waiver of the right to counsel is required before a criminal defendant is allowed to represent himself. [Citation.] The defendant should be made aware of the dangers and disadvantages of self-representation so the record shows he is making an informed choice with his eyes wide open. [Citation.] The purpose of this requirement is to determine whether the defendant in fact understands the significance and consequences of his decision and whether that decision is voluntary. . . . [W]e examine the record as a whole to determine whether the defendant understood the disadvantages of self-representation, including the risks and complexities of his case.'" (*People v. Orosco* (2022) 82 Cal.App.5th 348, 363 (*Orosco*).)

"On appeal the test is not whether specific warnings or advisements were given." (*Orosco, supra*, 82 Cal.App.5th at p. 363.) "[T]echnical legal knowledge is irrelevant to whether he or she is competent to waive the right to counsel." (*People v. Best* (2020) 49 Cal.App.5th 747, 758 (*Best*).) "The 'critical question is not whether a self-represented defendant meets the standards of an attorney, or even whether a defendant is capable of conducting an effective defense. Instead, [our high court has] accepted that the cost of recognizing a criminal defendant's right to self-representation may result "'in detriment to the defendant, if not outright unfairness.'" [Citation.]

8

But that is a cost we allow defendants the choice of paying, if they can do so knowingly and voluntarily.'" (*Id.* at p. 757)

"The question whether the defendant's assertion of the right to self-representation and waiver of the right to counsel was knowing and intelligent is reviewed de novo." (*Orosco*, *supra*, 82 Cal.App.5th at p. 358.)

Here, the record before the trial court shows Hackworth "was made aware of the dangers and disadvantages of self-representation" and "understood the significance and consequences of his decision." (*Orosco*, *supra*, 82 Cal.App.5th at p. 363.) Hackworth read and completed the *Faretta* waiver form. He made some edits on the form, using a common practice: initialing his corrections. Despite marking the "[n]o" boxes in response to the advisements, we interpret his circling and initialing the "[y]es" boxes to indicate his acknowledgment of the advisements. Accordingly, Hackworth acknowledged: (1) it was "almost always unwise" for a criminal defendant to represent himself; (2) he was "not entitled to any special privileges or treatment"; (3) his opponent would be "an experienced professional attorney"; (4) he would not receive more library privileges than other self-represented defendants and would have no staff or investigators assisting him; (5) he would be waiving ineffective assistance of counsel as an issue on appeal; (6) if he changed his mind during trial, he would not be afforded a postponement to find counsel; and (7) if he misbehaved or seriously disrupted trial, his right of self-representation could be terminated. The trial court reviewed the form

with Hackworth, informed him of his legal and constitutional rights, and found he understood his "rights as explained" and the nature of the charges.[1]

Additionally, Hackworth's request for self-representation was unequivocal, and he had "'a strong desire to represent himself.'" (*Orosco, supra*, 82 Cal.App.5th at p. 364.) Certainly, he responded "[n]o" to the question on the *Faretta* waiver form, "Do you now wish the court to permit you to represent yourself as your own attorney?" But, according to the trial court's minutes, Hackworth requested self-representation at the hearing on the *Faretta* waiver in January 2022. Thereafter, he represented himself in several hearings. During the November 2022 hearing, the trial court spoke to Hackworth regarding self-representation, and allowed him to continue representing himself. At the hearing on December 12, 2022, after the trial court announced it was appointing a public defender as Hackworth's counsel, Hackworth objected and sought to continue representing himself, stating, "I'm not going to let them represent me," "I don't want him on my case," and "I can represent myself."

The Attorney General argues Hackworth did not knowingly, intelligently, and voluntarily waive representation due to the purported errors on his *Faretta* waiver form. But, even if he struggled filling out or comprehending aspects of the form, "the form 'is not . . . a test the defendant must pass in order to achieve self-representation.'" (*Orosco, supra*, 82 Cal.App.5th at p. 364.) The "form must be seen as no more than a means by which the judge and the defendant seeking self-representation may have a

---

[1] Hackworth also indicated he did not know the maximum penalty if he were convicted. Nonetheless, according to the trial court's minutes, the trial court advised him of the maximum possible sentence while considering his form.

10

meaningful dialogue concerning the dangers and responsibilities of self-representation." (*People v. Silfa* (2001) 88 Cal.App.4th 1311, 1322.)

Thus, based on our independent examination of the record, we conclude Hackworth's waiver was knowing, intelligent, and voluntary.

*B. No Evidence Shows Hackworth Was Mentally Incompetent to Represent Himself*

Courts may deny self-representation when a defendant is mentally competent to stand trial but incompetent to conduct trial proceedings. (*Johnson, supra,* 53 Cal.4th at p. 523 [adopting the holding in *Indiana v. Edwards* (2008) 554 U.S. 164, 174 (*Edwards*)].) "[T]he standard that trial courts considering exercising their discretion to deny self-representation should apply is simply whether the defendant suffers from a severe mental illness to the point where he or she cannot carry out the basic tasks needed to present the defense without the help of counsel." (*Johnson,* at p. 530.) "'"Severe mental illness" appears to be a condition precedent. . . . Nothing in the [*Edwards*] opinion suggests that a court can deny a request for self-representation in the absence of this.'"[2] (*Orosco, supra,* 82 Cal.App.5th at p. 360.)

"A trial court need not routinely inquire into the mental competence of a defendant seeking self-representation. It needs to do so only if it is considering denying self-representation due to doubts about the defendant's mental competence. When a court doubts a defendant's

---

[2] We note the mental competence to represent oneself is distinct from the competence to waive one's right to counsel. (*Edwards, supra,* 554 U.S. at p. 172 ["'the competence that is required of a defendant seeking to waive his right to counsel is the competence to *waive the right,* not the competence to represent himself'"].)

11

competence to stand trial, it 'shall appoint a psychiatrist or licensed psychologist, and any other expert the court may deem appropriate, to examine the defendant.' [Citation.] Similarly, when it doubts the defendant's mental competence for self-representation, it may order a psychological or psychiatric examination to inquire into *that* question. To minimize the risk of improperly denying self-representation to a competent defendant, 'trial courts should be cautious about making an incompetence finding without benefit of an expert evaluation, though the judge's own observations of the defendant's in-court behavior will also provide key support for an incompetence finding and should be expressly placed on the record.' [Citation.]

"Trial courts must apply this standard cautiously. . . . Criminal defendants still generally have a Sixth Amendment right to represent themselves. Self-representation by defendants who wish it and validly waive counsel remains the norm and may not be denied lightly. A court may not deny self-representation merely because it believes the matter could be tried more efficiently, or even more fairly, with attorneys on both sides. Rather, it may deny self-representation only in those situations where *Edwards* permits it." (*Johnson, supra*, 53 Cal.4th at pp. 530–531.)

We review a trial court's denial of self-representation for abuse of discretion. (*Johnson, supra*, 53 Cal.4th at pp. 531–532.) "The trial court's determination regarding a defendant's competence must be upheld if supported by substantial evidence." (*Id.* at p. 531.)

Here, no evidence shows Hackworth suffered from a severe mental illness rendering him mentally incompetent to represent himself. In revoking his right of self-representation, the trial court expressed concern regarding his "ability to represent" himself. It cited his performance at the preliminary hearing on December 9, 2022—particularly his focus on

12

irrelevant issues that appeared to be legally inaccurate—and his *Faretta* waiver form.

These justifications are problematic. First, focusing on irrelevant issues does not necessarily constitute a severe mental illness. That justification, without additional explanation, appears to suggest the trial court revoked Hackworth's right of self-representation for efficiency purposes. (See *Johnson, supra*, 53 Cal.4th at p. 531.)

Second, Hackworth's *Faretta* waiver form does not demonstrate a severe mental illness. *Orosco* is instructive. In *Orosco*, the defendant completed a *Faretta* waiver form. (*Orosco, supra*, 82 Cal.App.5th at p. 353.) On the form, the defendant indicated he was requesting an interpreter, but then crossed out his selection, initialed the edit, and marked he was not requesting an interpreter. (*Ibid.*) The form contained a line, stating, "'I have been involved in _____ criminal proceedings in the past and I feel I am capable of representing myself.'" (*Ibid.*) The defendant initialed on the line, struck his initials, and initialed again. (*Ibid.*) At the preliminary hearing, the trial court inquired whether the defendant was requesting an interpreter. (*Id.* at p. 354.) The defendant wavered before disclosing, "'I honestly didn't know how to fill it out.'" (*Ibid.*) The trial court also asked about the defendant's response to the criminal proceedings line on the form. (*Ibid.*) The defendant responded, "'I thought that meant that if I was pro per in the past.'" (*Ibid.*) After given another opportunity to read the line, the defendant said, "'I read it. I don't understand what it's saying. [¶] . . . [¶] I haven't represented myself before. This is my first time representing myself. So I don't understand what I'm supposed to put, yeah or no, in the blank.'" (*Ibid.*) The trial court denied the *Faretta* motion because the defendant did not appear to comprehend the *Faretta* waiver form. (*Id.* at pp. 354–355.)

13

The appellate court reversed. It concluded, "Any confusion [the defendant] may have had about the waiver form was not by itself evidence of mental illness." (*Orosco*, *supra*, 82 Cal.App.5th at p. 360.) On the interpreter question, the defendant completed the form correctly by denoting he was not requesting an interpreter. (*Ibid.*) Despite expressing confusion at the hearing, the defendant clarified he did not need an interpreter, and the "momentary misunderstanding at the hearing was not evidence of his inability to carry out the basic tasks needed for self-representation." (*Ibid.*) Regarding his involvement in prior criminal proceedings, the defendant explained "he left the line blank because he had never represented himself before," and the appellate court considered it "not unusual . . . to leave a line blank when the answer is zero." (*Id.* at p. 361.) The appellate court found, "To the extent [the defendant] may have misunderstood what the question was asking, his simple misunderstanding again did not constitute evidence of inability to carry out the basic tasks of self-representation." (*Ibid.*)

Here, some answers on Hackworth's *Faretta* waiver form suggest he may have been confused. We discussed those answers above. But, as in *Orosco*, even if Hackworth was confused, "[a]ny confusion" Hackworth "may have had about the waiver form was not by itself evidence of mental illness." (*Orosco*, *supra*, 82 Cal.App.5th at p. 360.) Nothing in the record implies Hackworth suffered from a severe mental illness. "'Because there was no evidence before the trial court showing that [he] had such an affliction, *Edwards* was simply off the table.' [Citation.] And under *Johnson*, a California court may deny self-representation based on mental incompetence 'only in those situations where *Edwards* permits it.'" (*Ibid.*)

14

*C. Hackworth's Conduct Did Not Impact the Core Integrity of the Trial*

"A defendant's *Faretta* right is subject to termination whenever he engages in "'deliberate dilatory or obstructive behavior" [that] threatens to subvert "the core concept of a trial.'" [Citation.] 'When determining whether termination is necessary and appropriate, the trial court should consider several factors in addition to the nature of the misconduct and its impact on the trial proceedings,' including: (1) 'the availability and suitability of alternative sanctions,' (2) 'whether the defendant has been warned that particular misconduct will result in termination of in propria persona status,' and (3) 'whether the defendant has "intentionally sought to disrupt and delay his trial."' [Citation.] The intention to disrupt and delay trial is, in many instances, sufficient to order termination. [Citation.]

"The trial court must make a thorough record establishing the basis for termination. The record must include 'the precise misconduct on which the trial court based the decision to terminate. [Citation.] The court should also explain how the misconduct threatened to impair the core integrity of the trial. Did the court also rely on antecedent misconduct and, if so, what and why? Did any of the misconduct occur while the defendant was represented by counsel? If so, what is the relation to the defendant's self-representation? Additionally, was the defendant warned such misconduct might forfeit his *Faretta* rights? Were other sanctions available? If so, why were they inadequate? In most cases, no one consideration will be dispositive; rather, the totality of the circumstances should inform the court's exercise of its discretion.' [Citation.] The trial court has considerable discretion in determining whether termination of *Faretta* rights is necessary to maintain the integrity and fairness of proceedings. [Citation.] A court's decision will

15

not be disturbed absent a strong showing of clear abuse." (*People v. Ng* (2022) 13 Cal.5th 448, 494–495.)

The Attorney General asserts two instances of purported misconduct justify the trial court's termination of Hackworth's self-representation status. We address these in turn. First, the Attorney General highlights Hackworth failed to appear at the scheduled preliminary hearing in March 2022, and the criminal proceedings did not continue until he was apprehended on a bench warrant in November 2022. But the trial court did not rely on Hackworth's failure to appear as a basis to revoke self-representation. We are not required or permitted "to imply discretionary findings that the trial court did not in fact make." (*Best*, *supra*, 49 Cal.App.5th at p. 762.)

Second, the Attorney General points out Hackworth engaged in disruptive behavior at the preliminary hearing on December 12, 2022. After the trial court stated it was appointing a public defender to represent him, he resisted and still wanted to represent himself. The trial court responded, "See, that's the problem. I'm the judge and we're not going to argue about this. And that's one reason why you can't represent yourself because you're talking—wait. I'm talking. Court reporter needs to take this down. [¶] It's for your own protection as well; okay?" It appears the trial court cited Hackworth's reaction to the appointment as a basis to revoke his right of self-representation. But "a criminal defendant's frustration about being denied the right to represent himself—and forced to have an attorney speak for him against his will—may *cause* him to become disruptive when he would not otherwise have been." (*Orosco*, *supra*, 82 Cal.App.5th at p. 363.) Thus, Hackworth's frustration in this instance cannot be a proper basis to revoke self-representation.

16

"Erroneous denial of a *Faretta* motion is reversible per se. [Citation.] 'Applying this rule, we must reverse the judgment and remand the matter for a new trial. [Citation.] Because we do so, we need not consider [Hackworth]'s remaining contentions on appeal.' [Citation.] 'We emphasize that our decision is based on the record as of the time the trial court denied defendant's *Faretta* motion. Nothing we say here prevents the trial court on remand from evaluating [Hackworth]'s competence to represent [himself], and the potential for disruption, based on conditions as they exist at the time of any new motion for self-representation.'" (*Orosco, supra,* 82 Cal.App.5th at p. 364.)

## DISPOSITION

The judgment is reversed. The matter is remanded for a new trial. On remand, if Hackworth again seeks to represent himself, the request shall be considered based on the record before the court at the time of the ruling on any such motion.


MOTOIKE, J.

WE CONCUR:


SANCHEZ, ACTING P. J.


GOODING, J.

17